UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X

RICHARD FARMER,

                Plaintiff,

– against –

DR. LUCIA PATINO, OPTOMETRIST, P.C.,
d/b/a PATINO EYE CARE, *et al.*

                Defendants.

----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

18-cv-01435 (AMD) (LB)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ JAN 04 2019 ★

BROOKLYN OFFICE

**ANN M. DONNELLY,** District Judge.

## INTRODUCTION

The plaintiff filed this complaint on March 6, 2018, alleging violations of the Federal Labor Standards Act (FLSA), New York Labor Law (NYLL), and federal and state civil rights violations by his former employer, defendant Dr. Lucia Patino, Optometrist, P.C. ("Patino Eye Care"), and individual defendants Dr. Lucia Patino, Rodrigo Molina, and Dr. Angela Dussan. (ECF No. 1, Compl. ¶¶ 1-3,7-8,11,18,22.) On June 21, 2018, Patino Eye Care, Patino and Molina moved to dismiss the claims against them. (ECF No. 23.) For the reasons that follow, I deny the defendants' motion to dismiss the plaintiff's claims of retaliation (Counts VII, VIII, IX, and X), failure to provide a wage notice (Count III), and paystub (Count IV), and grant the motion to dismiss the plaintiff's remaining claims. I also dismiss all claims against Dussan.[1]

---

[1] In Dussan's *pro se* answer to the complaint on June 25, 2018, she counterclaims for retaliation and asks the Court to dismiss the plaintiff's claims against her (ECF No. 26). Because the only relief Dussan seeks through her counterclaim is dismissal of all claims against her, I construe it as a motion to dismiss.

1

# BACKGROUND[2]

The plaintiff's complaint is based on his approximately two-week period of employment with Patino's company, Patino Eye Care. The plaintiff was working at another optical retail store when defendant Molina of Patino Eye Care came in to the store, looking to hire a new employee. (ECF No. 1, Compl. ¶ 29.) The plaintiff applied for the position on October 27, 2017, and received an interview the same day. (Id. ¶ 27-31.) On October 30, 2017, he began work as a sales person and lab technician. (Id. ¶ 32.)

The plaintiff alleges that at a private meeting on November 9, 2017, Molina "suddenly and without warning restricted Plaintiff's movements and job duties within the practice." (Id. ¶ 33.) Molina told the plaintiff not to make any sales because the store "prefer[red] to leave that to the female Spanish (speaking) sales staff," and told the plaintiff not to look at patient files, electronic medical records, or bill Davis Vision. (Id. ¶¶ 33-34.) Molina told the plaintiff that he could write a letter or leave the job if he wanted to complain about the changes. (Id. ¶ 35.)

Sometime between November 9, 2017, and November 15, 2017, the plaintiff filed a complaint against Patino Eye Care with the EEOC. (Id. ¶¶ 33-39.) On November 15, 2017, the plaintiff met with Patino and Molina. (Id. ¶ 37.) They "read the EEOC Charge Complaint in

---

[2] For purposes of this motion, I accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). In his complaint, the plaintiff refers to and relies on various documents, including his EEOC complaint and checks he received from the defendants. Accordingly, I consider them in deciding this motion. *See* Discussion *infra*; *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

front of the Plaintiff," and Patino told the plaintiff that she would forward the EEOC complaint to her attorney. (*Id.* ¶¶ 37-38.)

That same day, November 15, 2017, Patino Eye Care issued a letter of termination and a check to the plaintiff for $1,886. (Compl. ¶ 42; ECF No. 29-2 at 4,6.) The plaintiff alleges that he was not given a pay stub with the check. (Compl. ¶ 42.) On November 16, 2017, Patino Eye Care issued the plaintiff another check for $1,444.52, along with a paystub that included the dates and number of hours the plaintiff worked, his rate of pay, the amount of taxes deducted from the paycheck, and his net pay. (ECF No. 24 at 8.) On December 5, 2017, the plaintiff received a "stop payment" notification for the first check, and TD Bank charged the plaintiff a $15 overdraft fee. (Compl. ¶ 43; ECF No. 29-2 at 8-11.)

The plaintiff alleges that sometime in December 2017, he learned that Patino and Molina "retaliated against Plaintiff while he was employed after learning that Plaintiff was involved and participating in a separate FLSA proceeding in the EDNY" against Woodside Optical Corporation ("Woodside"). (Compl. ¶¶ 44-46.) The plaintiff appears to allege that counsel for Woodside communicated with Patino and Molina while the plaintiff worked for Patino Eye Care, causing Patino and Malina to fire the plaintiff. (Compl. ¶¶ 45-52.) The plaintiff also alleges that Patino, Molina, and Dussan "interfered" with the plaintiff's current employment at Precise Optometry by agreeing to serve as witnesses against the plaintiff in the Woodside litigation. (Compl. ¶¶ 46-49.)[3]

---

[3] The plaintiff also makes a number of allegations against the defendants' counsel in this matter. (*See* ECF No. 29.) These allegations have no bearing on his claims and I do not consider them.

## DISCUSSION

### I. Standard of Review

In order to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings are to be construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

Allegations in a *pro se* complaint are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court must read a *pro se* complaint liberally and interpret it to raise the strongest arguments it suggests. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191–93 (2d Cir. 2008). "This is especially true when dealing with *pro se* complaints alleging civil rights violations." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)).[4]

At the motion to dismiss stage, the court "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." *Williams*, 440 F. App'x at 9 (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)). The court may also

---

[4] The defendants argue that the plaintiff is not entitled to "special solicitude" because of his history of filing similar lawsuits against other eye care employers. (ECF No. 23 at 10.) It is true that the plaintiff seems to specialize in this kind of litigation. Nevertheless, he is not an attorney, and should not be held to the same standards as an attorney.

4

consider any "documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in [the] plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit," as long as the plaintiff relied on the "terms and effect of a document in drafting the complaint." *Chambers*, 282 F.3d at 153 (citing *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

## II. Retaliation Claims

The plaintiff asserts retaliation claims under the FLSA and New York Wage Theft Prevention Act (NYLL § 215), alleging that the defendants fired him in retaliation for his filing of an EEOC claim against Patino Eye Care. (Compl. ¶¶ 36-39, 98-104.) The defendants argue that the plaintiff's allegations are too vague and conclusory to support a retaliation claim under federal or state law.[5] For the following reasons, I deny the defendants' motion to dismiss the plaintiff's retaliation claims (Counts VII, VIII, IX, X).

Both the FLSA and NYLL make it unlawful to discharge an employee in retaliation for engaging in protected activity. *See* 29 U.S.C. § 215(a)(3) (unlawful for employer to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]"); N.Y. Lab. Law § 215(1)(a) (unlawful for employer to "discharge, threaten, penalize, or in any other manner

---

[5] The defendants also argue that the plaintiff cannot state a claim for retaliation where the retaliatory conduct alleged is communication between the defendants and counsel for Woodside. (ECF No. 23 at 16-17.) However, the complaint alleges that the defendants terminated the plaintiff after reading the plaintiff's EEOC claim, which if true, is clearly actionable conduct under the FLSA and NYLL. *See* discussion *infra*.

5

discriminate or retaliate against any employee ... because such employee has made a complaint to his or her employer ... that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates [the NYLL]"). The standards for stating a claim for retaliation under the FLSA and the New York Labor Law are similar, and require a plaintiff to make a *prima facie* showing of retaliation by pleading (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011) (citing *Mullins v. City of New York*, 626 F.3d 47 (2d Cir. 2010) *and Higueros v. New York State Catholic Health Plan, Inc.*, 526 F.Supp.2d 342, 347 (E.D.N.Y.2007)).

A complaint alleging unlawful retaliation need not "plead every element of a prima facie case," but rather must meet the plausibility standard established by *Twombly* and *Iqbal*. *Bowen v. Baldwin Union Free Sch. Dist.*, No. 15-CV-6829, 2017 WL 4083553, at *7 (E.D.N.Y. Aug. 23, 2017), *report and recommendation adopted*, No. 15-CV-6829, 2017 WL 4083573 (E.D.N.Y. Sept. 14, 2017). The plaintiff is not required to produce evidence of each prima facie element, but "must plead facts that indicate an ability to do so." *Id.* (quoting *McManamon v. Shinseki*, No. 11-CV-7610, 2013 WL 3466863, at *4 (S.D.N.Y. July 10, 2013)).

The plaintiff satisfies the first two elements of retaliation; he alleges that he engaged in a "protected activity" by filing an EEOC claim against Patino Eye Care before he was fired, and that the defendants terminated his employment on November 15, 2017. *See Greathouse v. JHS Security Inc.*, 784 F.3d 105, 109 (2d Cir. 2015) (defining protected activity to include any written or oral complaint "sufficiently clear and detailed for a reasonable employer to understand it, in

light of both content and context, as an assertion of rights protected by the statute and a call for their protection." (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011))); *Manswell v. Heavenly Miracle Acad. Servs., Inc.*, No. 14-CV-7114, 2017 WL 9487194, at *9 (E.D.N.Y. Aug. 23, 2017) ("Complaining to a supervisor, whether formally or informally, is considered protected activity, as is filing a complaint with the EEOC."), *report and recommendation adopted*, No. 14-CV-7114, 2017 WL 4075180 (E.D.N.Y. Sept. 14, 2017); 29 U.S.C. § 215(a)(3); N.Y. Lab. L. § 215(1)(a).

The plaintiff also pleads enough facts to show a "causal connection" between his EEOC claim and the defendants' decision to terminate his employment. Specifically, the plaintiff alleges that Patino and Molina read and commented on his EEOC claim, at a meeting with the plaintiff, and that they fired him the same day. (Compl. ¶¶ 36-39.) The timing of the plaintiff's termination is sufficient to establish a "connection between the protected activity and the adverse employment action" at this stage. *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001) ("The plaintiff can indirectly establish a causal connection to support a retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action.'" (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996))).

The plaintiff has established a prima facie case of retaliation; therefore, the defendants' motion to dismiss the plaintiff's retaliation claims under the FLSA and NYLL is denied.

### III. Overtime Claims

Under both federal and New York law, employees who work more than 40 hours per week must be compensated for any additional hours at a rate of at least one and a half times their

regular hourly wage. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a); 12 N.Y.C.R.R. § 146-1.4; *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (noting that the NYLL adopts the FLSA definition of overtime); *Valdez v. H & S Rest. Operations, Inc.*, 2016 WL 3079028, at *3 (E.D.N.Y. Mar. 29, 2016), *adopted by*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016) ("New York's Labor Law is the state analogue to the federal FLSA. Although the Labor Law does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of annual sales, it otherwise mirrors the FLSA in compensation provisions regarding overtime wages.") (internal citations omitted).

To plead a plausible FLSA overtime claim, the plaintiff must provide sufficient detail about the length and frequency of his unpaid work to support a reasonable inference that he worked more than forty hours in a given week. *Nakahata*, 723 F.3d at 201; *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011); *see also Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) ("We conclude that in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.").

The plaintiff, whose employment lasted about two weeks, alleges that he worked "in excess of forty (40) hours per workweek," "six days a week," and that Patino Eye Care "had a policy and practice of refusing to pay overtime compensation." (*See* Compl. ¶¶ 32,71,72.) The plaintiff does not specify how many hours in excess of 40 that he worked per week, nor does he include the times he came in and left work. (*See id.*) Without more, the complaint does not allege a plausible claim for unpaid overtime under the FLSA or NYLL. *See Nakahata*, 723 F.3d

at 201 (overtime claims which "raise[d] the possibility that Plaintiffs were undercompensated in violation of the FLSA and NYLL" properly dismissed because plaintiffs "merely alleged that they were not paid for overtime hours worked" without sufficient allegations that plaintiffs worked more than forty hours in a given week); *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013) (affirming dismissal of overtime claims because "complaint was devoid of any numbers to consider beyond those plucked from the statute… [it] alleged only that in "some or all weeks" [the plaintiff] worked more than "forty hours" a week without being paid "1.5" times her rate of compensation); *see also Bowen*, 2017 WL 4083553, at *5 (dismissing overtime claims under FLSA and NYLL "despite the detail with which plaintiff describes his overtime work," because "plaintiff fails to aver the total hours typically worked in a week, or his scheduled start time such that the court can calculate those hours"). The plaintiff's overtime claims, Counts I and II, are dismissed without prejudice.

## IV. Discrimination Claims

The plaintiff includes several claims under Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA) and Age Discrimination in Employment Act (ADEA), and the Genetic Information Nondiscrimination Act (GINA). For the reasons discussed below, the plaintiff has failed to state a claim of discrimination under Title VII, the ADA, ADEA, or GINA, and these claims are dismissed.

As an initial matter, individuals cannot be held liable under Title VII, the ADEA or the ADA. *See Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) ("[D]ismissal of the Title VII and ADEA claims against the individual Defendants was appropriate as neither statute subjects individuals, even those with supervisory liability over the plaintiff, to personal liability.") (citing

*Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995)); *Szewczyk v. City of New York*, No. 17-CV-01884, 2018 WL 4688946, at *6 (E.D.N.Y. Sept. 28, 2018) ("Individuals are not subject to liability under Title VII, the ADA, and the ADEA.") (citations omitted). The plaintiff does not specify against which defendants he is asserting these claims; to the extent that he means to assert them against individual defendants Patino, Molina, and Dussan, those claims are dismissed.

    a. Title VII and ADEA Claims

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of the individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Under the ADEA, an employer may not "discriminate against any individual ... because of such individual's age." *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018) (citing 29 U.S.C. § 623 (a)(1)).

To establish a prima facie case of discrimination under Title VII and the ADEA, a plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010) (internal citations omitted); *Boonmalert*, 721 F. App'x at 32; *see also Deberry v. Hosp.*, No. 12–CV–6251, 2016 WL 3840673, at *5 (E.D.N.Y. July 12, 2016), *aff'd sub nom. DeBerry v. Brookdale Hosp. Med. Ctr.*, 699 F. App'x 72 (2d Cir. 2017). A plaintiff alleging employment discrimination must assert a causal connection between the discrimination and the plaintiff's protected characteristic; in other words, the plaintiff must

allege that the defendants discriminated against him "because of" his race, gender, or other protected characteristic. *Williams*, 440 F. App'x at 9 (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)).

The plaintiff includes several claims under Title VII and the ADEA, and appears to allege that the defendants discriminated against him, but he does not assert that is a member of a protected class or that the defendants had discriminatory intent. Nor does the plaintiff include his age in the complaint, or an allegation that the defendants knew his age. On these facts, I find that the plaintiff has not adequately pled a discrimination claim under Title VII or the ADEA. *See, e.g., Williams*, 440 F. App'x at 9 (finding plaintiff failed to meet burden on Title VII and dismissing claim where "there simply is not enough [context] to plausibly suggest that the comment was intended to have a racial sub-text"); *Boonmalert*, 721 F. App'x at 32-33 ("None of the actions that form the basis of Boonmalert's complaint evidence differential treatment based on age.").

  b. ADA Claims

The ADA prohibits employment discrimination against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112(a). The term "disability" means (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C.A. § 12102(1).

The plaintiff does not allege that he has a disability or was perceived to have a disability. There are no facts in the complaint that would allow the Court to assume, even under a liberal pleading standard, that the plaintiff is a "covered person" under the ADA. *See* 42 U.S.C.A. §§ 12102, 12112. Therefore, the plaintiff fails to state a claim under the ADA. *See, e.g., White v. Roosevelt Union Free Sch. Dist. Bd. of Educ.*, No. 15-CV-1035, 2017 WL 9485719, at *8 (E.D.N.Y. Dec. 20, 2017), *report and recommendation adopted,* No. 15-CV-1035, 2018 WL 620485 (E.D.N.Y. Jan. 30, 2018).

### c. GINA Claims

The GINA restricts the circumstances under which an employer may request or use genetic information, including information about an individual's "genetic tests, the genetic tests of family members of such individual, and the manifestation of a disease or disorder in family members of such individual." 42 U.S.C. § 2000ff(4)(A). The Act makes it unlawful for an employer "to request, require, or purchase genetic information with respect to an employee or a family member of the employee," 42 U.S.C. § 2000ff-1(b), or to discriminate against an employee or prospective employee because of genetic information with respect to the employee, *id.* § 2000ff-1(a). The plaintiff does not allege that the defendants took any kind of action related to his genetic information, let alone discriminated against him as a result of such information. *See Seck v. Info. Mgmt. Network,* 697 F. App'x 33, 34 (2d Cir. 2017) (holding district court properly dismissed GINA claim because Seck did not allege discrimination based on his genetic information). These claims are dismissed.

### V. Claims Pursuant to the Second Restatement of Torts

The plaintiff alleges several claims pursuant to the Restatement (Second) of Torts: invasion of privacy (Counts XIII, XIV, XV, XVI), intentional infliction of emotional distress (Count XVII), and intentional interference with an employment contract (Counts XVIII and XIX). All of these claims are dismissed because the Restatement of Torts is not a law upon which the plaintiff can base a lawsuit. In any event, as explained below, the plaintiff fails to allege viable causes of action.

    a. Invasion of Privacy

New York law recognizes only "a limited statutory right of privacy" under New York Civil Rights Law §§ 50 and 51. *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 439 (1982); *see also Shields v. Gross*, 58 N.Y.2d 338, 344, (1983) ("Historically, New York common law did not recognize a cause of action for invasion of privacy"). Civil Rights Law §§ 50 and 51 "were drafted narrowly to encompass only the commercial use of an individual's name or likeness and no more." *Arrington*, 55 N.Y.2d at 439. A plaintiff complaining of invasion of privacy must prove: (1) use of plaintiff's name, portrait, picture or voice (2) for advertising purposes or for the purposes of trade (3) without consent and (4) within the state of New York. *Lohan v. Take-Two Interactive Software, Inc.*, 31 N.Y.3d 111, 120 (2018) (internal citations omitted). Because the plaintiff does not allege any of these elements, his invasion of privacy claims (Counts XIII, XIV, XV and XVI) must be dismissed.

    b. Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional

13

distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Greenaway v. Cty. of Nassau*, 97 F. Supp. 3d 225, 239–40 (E.D.N.Y. 2015) (quoting *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115 (1993)). The "extreme and outrageous conduct" must "go beyond all possible bounds of decency" and be "atrocious, and utterly intolerable in a civilized community." *Greenaway*, 97 F. Supp. 3d at 239–40 (internal citations omitted).

New York courts are particularly reluctant to find that conduct in connection with employment discrimination claims is sufficiently extreme or outrageous "absent a deliberate and malicious campaign against the plaintiff." *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 631 (E.D.N.Y. 2012) (collecting cases). Where the conduct alleged is not sufficiently outrageous as a matter of law, the Court may dismiss the claim before discovery takes place. *Robles*, 841 F. Supp. 2d at 631 ("Accepting as true that the Defendant unlawfully fired the Plaintiff based on her age and in retaliation for her filing of the 1999 lawsuit, the Court finds that these allegations are insufficient to meet the threshold for extreme and outrageous conduct necessary to sustain a claim for intentional infliction of emotion distress."); *Stuto*, 164 F.3d at 827 (affirming dismissal of IIED claim on a Rule 12(b)(6) motion where plaintiff failed to allege conduct that was sufficiently extreme and outrageous).

The plaintiff's claims about the defendants' conduct, even if true, are not "extreme and outrageous," and do not meet the threshold for intentional infliction of emotional distress under New York law; therefore, Count XVII is dismissed for failure to state a claim.

c. Intentional Interference with Employment Contract

To establish a claim for tortious interference with a contract under New York law, a plaintiff must allege (1) the existence of a valid contract with a third party; (2) defendant's

knowledge of that contract; (3) defendant's intentional and improper procuring of a breach, and (4) damages. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (citing *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413 (1996)); *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 444 (E.D.N.Y. 2011). The plaintiff does not allege that he had an employment contract with Patino Eye Care or a contract with a third party. Nor does he allege that any of the defendants knew of or intentionally breached a contract. Therefore, the complaint fails to state a claim for tortious interference with a contract and Counts XVIII and XIX must be dismissed.

## VI. Other NYLL Claims

The plaintiff alleges that the defendants violated NYLL § 195 and 162 by failing to a) provide him with a wage notice at the time he was hired, b) issue him a paystub, c) maintain records, and d) provide a meal break. The defendants move to dismiss the first two claims on the basis that the defendants did issue the plaintiff a paystub and the latter two claims for failure to state a claim. For the reasons below, I deny the defendants' motion to dismiss the plaintiff's claim for failure to provide a wage notice and paystub, and grant their motion to dismiss the plaintiff's claims for failure to maintain records and provide a meal break.

### a. Failure to Provide Wage Notice

Under the NYLL § 195(1)(a), an employer must provide wage and hour notices informing employees of the rate and basis of pay, and other pertinent information. N.Y. Lab. Law § 195(1)(a); *Bustamente v. Uno Cafe & Billiards Inc.*, No. 15-CV-04192, 2018 WL 2349507, at *2 (E.D.N.Y. May 23, 2018). Whenever an employer provides the notice to an employee, "the employer shall obtain from the employee a signed and dated written acknowledgment...of receipt of this notice, which the employer shall preserve and maintain for

six years." *Rodriguez v. Ridge Pizza Inc.*, No. 16-CV-00254, 2018 WL 1335358, at *9 (E.D.N.Y. Mar. 15, 2018) (quoting NYLL § 195(1)(a)). An employee who does not receive such notice is entitled to damages of $50 per day, up to a total of $5,000. N.Y. Lab. Law § 198(1-b).

According to the plaintiff, the defendants never provided him with a wage notice as required by NYLL § 195(1)(a). (Compl. ¶¶ 87-88.) At this stage, the plaintiff's allegation is sufficient to state a claim for a violation of NYLL § 195(1)(a).[6] *See Rodriguez*, 2018 WL 1335358, at *9. Therefore, the defendants' motion to dismiss Count IV is denied.

  b. Paystub Violation

NYLL § 195(3) requires employers to "furnish each employee with a statement with every payment of wages," listing detailed information including "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof...gross wages; deductions; allowances...and net wages." If the plaintiff succeeds on a claim for failure to provide a paystub, he is entitled to "two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." N.Y. Lab. Law § 198(1-d).

According to the plaintiff, the defendants never provided him with a paystub as required by NYLL § 195(3). (Compl. ¶¶ 41-42, 89-90.) The plaintiff's allegations are sufficient to

---

[6] The defendants may very well have an affirmative defense to the plaintiff's claim under NYLL § 198(1-b), but the Court cannot dismiss a claim based on an affirmative defense. *See, e.g., Marin v. Apple-Metro, Inc.*, No. 12-CV-5274, 2017 WL 4950009, at *17 (E.D.N.Y. Oct. 4, 2017) (considering affirmative defense in NYLL § 198(1-b) on summary judgment).

plausibly state a claim for a violation of NYLL § 195(3).[7] Therefore, the defendants' motion to dismiss Count IV is denied.

c. Record-Keeping Violation and Failure to Provide Meal Period

The plaintiff asserts claims under NYLL § 195(4), for failing to maintain records, and NYLL § 162, for failing to provide the plaintiff a meal break (Counts V and VI). NYLL § 195(4) requires employers "to establish, maintain and preserve for not less than six years...payroll records showing for each week worked the hours worked, the rate or rates of pay and basis thereof...gross wages, deductions...and net wages for each employee." NYLL § 162(2) provides that "[a]n employee who works a shift of more than six hours which extends over the noon day meal period is entitled to at least thirty minutes off within that period for the meal period."

The plaintiff's claims that the defendants violated NYLL §§ 195(4) and 162 (Counts V and VI) fail as a matter of law because no there is no private right of action under either statute. *See Carter v. Tuttnaeur U.S.A. Co.*, No. 2:13-CV-679, 78 F. Supp. 3d 564, 571 (E.D.N.Y. January 12, 2015) ("However, nothing in the NYLL authorizes an independent cause of action based on a violation of § 195(4)."); *Hill v. City of N.Y.*, 136 F. Supp. 3d 304, 351 (E.D.N.Y. 2015) (collecting cases holding no right of action under § 162); *Awan v. Durrani*, No. 14-CV-

---

[7] The defendants provided the Court with a paystub dated November 16, 2017, attached to the Patino Affirmation. (ECF No. 24 at 8.) However, the plaintiff disputes the accuracy of the paystub (*see* ECF No. 29 at 3) and did not rely on it in drafting the complaint; therefore, I cannot hold that it is akin to a "contract[s] or other legal document[s] containing obligations upon which the plaintiff's complaint stands or falls" and rely on it in deciding this motion. *See Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006); *Chambers*, 282 F.3d at 153.

4562, 2015 WL 4000139, *9 n.12 (E.D.N.Y. July 1, 2015). Therefore, Counts V and VI are dismissed.

## VII. Claims against Dussan

While Dussan is not specifically named in any of the counts of the complaint, the plaintiff seems to allege that Dussan "interfere[d] with Plaintiff's employment" at Patino Eye Care, "agreed to assist opposing counsel with [Woodside] to help damage, discriminate, harass and discredit Plaintiff during his FLSA proceeding" by serving as a witness in that action, and invaded the plaintiff's privacy. (Compl. ¶¶ 46-50.)

Even judged by the more lenient standard applied to *pro se* litigants, the complaint does not state any viable causes of action against Dussan. Agreeing to be a witness in a litigation does not give rise to a claim, and as discussed above, New York law does not recognize a right of action for invasion of privacy in this context. The plaintiff's allegation that Dussan "interfered with his employment" in general is the type of "'naked assertion' devoid of 'further factual enhancement'" that does not state a valid claim. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Therefore, to the extent the complaint states any claims against Dussan, they are dismissed. *See Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363–64 (2d Cir. 2000) (district court has the inherent power to dismiss a case *sua sponte* if it determines that the action is frivolous).

## CONCLUSION

For the reasons stated above, I grant the defendants' motion to dismiss Counts I, II, V, VI, and XI through XX, and all claims asserted against Dussan. I deny the defendants' motion to

dismiss the plaintiff's claims of retaliation (Counts VII, VIII, IX, and X), and for failure to provide a wage notice (Count III) and paystub (Count IV).

**SO ORDERED.**

Dated: Brooklyn, New York
      January 3, 2018

                                              s/Ann M. Donnelly
                                        _____
                                        ANN M. DONNELLY
                                        United States District Judge