UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RICHARD FARMER,

                            Plaintiff,                     18-CV-1435 (AMD) (LB)

           -against-

DR. LUCIA PATINO, OPTOMETRIST, P.C.,
d/b/a PATINO EYE CARE, DR. LUCIA PATINO OD,
OWNER, RODRIGO MOLINA, OWNER G.M., and
DR. ANGELA V. DUSSAN OD, et al.,

                       Defendants.
-------------------------------------------------------------------X

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Mohammad B. Shihabi, Esq.
Amanda M. Fugazy, Esq.
Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas, 11th Floor
New York, NY 10105
(212) 370-1300

*Attorneys for Defendants Dr. Lucia Patino,
Optometrist, P.C., d/b/a Patino Eye Care, Dr. Lucia
Patino, O.D., and Rodrigo Molina*

Dated: December 12, 2019
     New York, New York

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................... 1

PROCEDURAL HISTORY................................................................................................... 3

SUMMARY OF UNDISPUTED MATERIAL FACTS.......................................................... 4

STANDARD FOR SUMMARY JUDGMENT....................................................................... 8

ARGUMENT ....................................................................................................................... 9

POINT I: PLAINTIFF CANNOT SUCCEED AS A MATTER OF LAW ON HIS FLSA AND
NYLL RETALIATION CLAIMS. ........................................................................................ 9

   A.  PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF RETALIATION
       UNDER THE FLSA AND NYLL. ............................................................................ 10

    1.  Plaintiff's EEOC Complaint and the Letter Complaint are not "protected activity"
       and therefore cannot satisfy the first element of a prima facie claim of retaliation
       under either the FLSA or the NYLL ........................................................................ 11

    2.  Even if the EEOC Complaint and the Letter Complaint qualify as protected activity–
       which they do not – Plaintiff has failed to establish a causal connection between
       either complaint and Defendants' decision to terminate his employment .................... 12

    3.  The Woodside Optical Lawsuit is not a protected activity "known to Defendants"
       and therefore cannot satisfy the first element of a prima facie claim of retaliation
       under either the FLSA or the NYLL. ........................................................................ 16

    4.  Plaintiff's employment with Precise Optometry ........................................................ 17

   B.  DEFENDANTS TERMINATED PLAINTIFF'S EMPLOYMENT FOR
       LEGITIMATE, NON-RETALIATORY REASONS UNRELATED TO PLAINTIFF'S
       ALLEGED PROTECTED ACTIVITY. ...................................................................... 18

POINT II: PLAINTIFF CANNOT RECOVER STATUTORY DAMAGES UNDER THE
WPTA BECAUSE DEFENDANTS PAID PLAINTIFF ALL WAGES OWED AND
FURNISHED PLAINTIFF WITH A PAYSTUB AS REQUIRED UNDER THE LAW........... 22

   A.  PLAINTIFF'S WPTA CLAIM FOR STATUTORY DAMAGES FOR DEFENDANTS'
       ALLEGED FAILURE TO PROVIDE A WAGE NOTICE FAILS BECAUSE
       DEFENDANTS PAID PLAINTIFF IN FULL ............................................................ 22

   B.  PLAINTIFF'S WPTA CLAIM FOR STATUTORY DAMAGES FOR DEFENDANTS'
       ALLEGED FAILURE TO PROVIDE A PAY STUB ALSO FAILS.............................. 24

CONCLUSION................................................................................................................... 24

# **TABLE OF AUTHORITIES**

**Cases**

*Aponte v. Modern Furniture Mfg. Co., LLC*,
  2016 WL 5372799 (E.D.N.Y. Sept. 26, 2016) ........................................................ 10

*Baguidy v. Boro Transit Inc.*,
  283 F. Supp. 3d 14 (E.D.N.Y. 2017) .................................................................... 11

*Bowen v. Baldwin Union Free Sch. Dist.*,
  2017 WL 4083553 (E.D.N.Y. August 23, 2017) ................................................ 15, 16

*Delaney v. Bank of Am. Corp.*,
  766 F.3d 163 (2d Cir. 2014) .............................................................................. 20

*DeMarco v. Holy Cross High Sch.*,
  4 F.3d 166 (2d Cir. 1993) ................................................................................. 20

*Dunn v. Sederakis*,
  143 F. Supp. 3d 102 (S.D.N.Y. 2015) .................................................................. 18

*Ehrbar v. Forest Hills Hosp.*,
  131 F. Supp. 3d 5 (E.D.N.Y. 2015) ..................................................................... 14

*Espinosa v. Abraham Refrigeration Corp.*,
  2019 WL 2725539 (S.D.N.Y. July 1, 2019) ........................................................... 22

*Giudice v. Red Robin Int'l, Inc.*,
  555 F. App'x 67 (2d Cir. 2014) ..................................................................... 14, 15

*Jeanty v. Newburgh Beacon Bus Corp.*,
  2018 WL 6047832, (S.D.N.Y. Nov. 19, 2018) ........................................................ 11

*Kalra v. HSBC Bank USA, N.A.*,
  567 F. Supp. 2d 385 (E.D.N.Y. 2008) .................................................................. 21

*Kassman v. KPMG LLP*,
  925 F. Supp. 2d 453 (S.D.N.Y. 2013) .................................................................. 11

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
  563 U.S. 1 (2011) ........................................................................................... 11

*Lu v. Chase Inv. Servs. Corp.*,
  412 F. App'x 413 (2d Cir. 2011) ......................................................................... 21

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 7992, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ........................................ 9, 21

*Medina v. Ricardos Mech., Inc.*,
  2018 WL 3973007 (E.D.N.Y. Aug. 20, 2018) ........................................................... 10, 12, 17

*Middleton v. Metro. Coll. of New York*,
  545 F.Supp.2d 369 (S.D.N.Y.2008) ................................................................................ 21

*Palencar v. New York Power Auth.*,
  2019 WL 4918426 (N.D.N.Y. Oct. 4, 2019) ............................................................. 10, 14

*Papelino v. Albany Coll. of Pharm. of Union Univ.*,
  633 F.3d 81 (2d Cir. 2011) .............................................................................................. 14

*Perez v. Jasper Trading, Inc.*,
  2007 WL 4441062 (E.D.N.Y. Dec. 17, 2007) ................................................................. 9

*Pierre v. Air Serv. Sec.*,
  2016 WL 5136256 (E.D.N.Y. Sept. 21, 2016) ............................................................... 15

*Quintanilla v. Suffolk Paving Corp.*,
  2019 WL 885933 (E.D.N.Y. Feb. 22, 2019) .................................................................... 9

*Robledo v. No. 9 Parfume Leasehold*,
  2013 WL 1718917 (S.D.N.Y. Apr. 9, 2013) .................................................................. 11

*Salazar v. Bowne Realty Assocs., L.L.C.*,
  796 F. Supp. 2d 378 (E.D.N.Y. 2011) ........................................................................... 14

*Santi v. Hot in Here, Inc.*,
  2019 WL 290145 (S.D.N.Y. Jan. 22, 2019) ..................................................................... 9

*Suwanphanu v. Mount Sinai Health Sys., Inc.*,
  2019 WL 6050971 (S.D.N.Y. Nov. 15, 2019) ............................................................... 20

*University of Tex. Sw. Med. Ctr. v. Nassar*,
  570 U.S. 338 (2013) ....................................................................................................... 10

*Vazquez v. Victor's Café 52nd Street, Inc.*,
  2019 WL 4688698 (S.D.N.Y. Sept. 26, 2019) ................................................................. 8

*Velazquez v. Yoh Servs., LLC*,
  2019 WL 1448716 (S.D.N.Y. Mar. 15, 2019) ............................................................... 19

*Weinstock v. Columbia Univ.*,
  224 F. 3d 33 (2d Cir. 2000) ........................................................................................... 10

**Statutes**

29 U.S.C. § 215(a)(3)......................................................................................................... 9

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq* ..................................................................... 1

F.R.C.P. Rule 12(b)(6) ................................................................................................................... 3

Fed. R. Civ. P. 56(b) ...................................................................................................................... 1

Fed. R. Civ. P. 56(a) ...................................................................................................................... 8

Fed. R. Civ. P. 56(c)(1) ................................................................................................................. 9

N.Y. Lab. Law § 198 ............................................................................................................... 22, 24

N.Y. Lab.Law § 198(1-b) .............................................................................................................. 22

N.Y.Lab. Law § 198(1-b), (1-d) .................................................................................................... 22

N.Y Lab. Law. § 195(1)(a) ....................................................................................................... 22, 24

N.Y.Lab. Law § 195(3) .................................................................................................................. 24

N.Y.Lab.Law § 215 ......................................................................................................................... 9

## PRELIMINARY STATEMENT

Defendants Dr. Lucia Patino, Optometrist, P.C. d/b/a Patino Eye Care ("Patino Eye Care"), Dr. Lucia Patino OD ("Dr. Patino"), and Rodrigo Molina ("Mr. Molina") (collectively, "Defendants"), respectfully submit this memorandum of law in support of Defendants' summary judgment motion pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 56(b). Defendants seek summary judgment on all six remaining counts of Plaintiff Richard Farmer's ("Plaintiff" or "Mr. Farmer") March 6, 2018 Complaint ("Plaintiff's Complaint").

In his Complaint, Plaintiff alleges that (i) Defendants retaliated against Plaintiff because Plaintiff engaged in protected activity under the Fair Labor Standards Act, 29 U.S.C. 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL") (Counts VII, VIII, IX, and X); and (ii) Defendants violated the New York Wage Theft Prevention Act ("WPTA") by failing to provide Plaintiff with a wage notice upon hiring and a paystub with the one and only paycheck he received for his employment with Defendants (Counts III and IV).

Plaintiff premises his FLSA and NYLL retaliation claims on two alleged protected activities: (1) his November 14, 2017 Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination ("EEOC Complaint") and accompanying 6-page letter complaint ("Letter Complaint"), and (2) his September 2016 FLSA and NYLL lawsuit against his former employer, Woodside Optical Corp. ("Woodside Optical Lawsuit"). Plaintiff's claims fail as a matter of law for several reasons.

The claims premised upon the EEOC Complaint and the Letter Complaint fail because Plaintiff cannot establish a prima facie case of retaliation or rebut the Defendants' legitimate non-retaliatory reasons for his termination.

To make a prima facie case of retaliation under the FLSA, Plaintiff must show: (1) participation in protected activity known to the defendant; (2) an employment action

{00737279.DOCX.8}                    1

disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.  Plaintiff cannot establish the first or third elements of a prima facie case.  In this case, neither the EEOC Complaint nor the Letter Complaint contains a single allegation that Defendants violated the FLSA or the NYLL.  Thus, neither complaint qualifies as "protected activity" under the FLSA or the NYLL.  Additionally, even if the Court found that the EEOC Complaint and the Letter Complaint are protected activity under the FLSA and the NYLL – which they are not – Plaintiff's claims would still fail because Plaintiff cannot establish a causal connection between his EEOC Complaint or the Letter Complaint and Defendants' decision to terminate his employment.  No causal connection between Plaintiff's alleged protected activity and his termination can be shown because: (a) Defendants made the decision to terminate Plaintiff's employment on November 11, 2017, days before Plaintiff filed the EEOC Complaint or sent the Letter Complaint; and (b) Defendants' adverse employment actions against Plaintiff preceded his alleged "protected activity" and, in such cases, mere temporal proximity between the adverse action and protected activity cannot defeat an employer's motion for summary judgment.

Similarly, Plaintiff cannot establish a prima facie case of retaliation based on his filing of the Woodside Optical Lawsuit.  Plaintiff has provided no evidence that Defendants knew of the Woodside Optical Lawsuit before terminating his employment.  Indeed, Plaintiff's primary theory in support of his allegations is that Defendants' counsel, Paul P. Rooney, Esq., of Defendants' law firm, Ellenoff Grossman & Schole, LLP ("EGS"), is engaged in a "vendetta" against Plaintiff and that it was Mr. Rooney who had caused Defendants to learn of the Woodside Optical Lawsuit and then subsequently terminate Plaintiff's employment.  These ludicrous allegations are completely unsupported by any evidence.  Accordingly, no evidence of "causal connection" between the alleged protected activity (filing the Woodside Optical Lawsuit) and Plaintiff's termination exists.

Finally, even if the Court were to disagree with Defendants and find that Plaintiff could make out a prima facie case of retaliation under the FLSA and/or the NYLL, Defendants would still be entitled to summary judgment because Defendants have provided legitimate, non-retaliatory reasons for terminating Plaintiff's employment, and Plaintiff cannot establish that Defendants' reasons are pretextual.  Thus, Plaintiff's retaliation claims fail as a matter of law.

Defendants are also entitled to summary judgment on Plaintiff's WPTA claims because Defendants timely paid Plaintiff (by his own admission) his wages in full.  Therefore, Defendants have met their burden under the affirmative defense to a WPTA claim.  Second, contrary to his false allegations, Defendants did provide Plaintiff with a WPTA-compliant paystub.

Accordingly, since Plaintiff has no viable retaliation claims against the Defendants under the FLSA and the NYLL, and cannot prevail on his WPTA claims, Defendants are entitled to summary judgment.

## PROCEDURAL HISTORY

On March 6, 2018, Plaintiff initiated this case by filing a twenty (20) count complaint with this Court against Defendants Patino Eye Care, Dr. Patino, Mr. Molina, and Dr. Angela V. Dussan O.D. ("Dussan").  *See* ECF Dkt. No. 1.  Plaintiff served Defendants on May 31, 2018.  *See* ECF Dkt. No. 17.

On June 21, 2018, Defendants moved to dismiss Plaintiff's Complaint under F.R.C.P. Rule 12(b)(6).  *See* ECF Dkt. Nos. 22, 23, 24.  Defendants requested that the Court dismiss Plaintiff's Complaint in its entirety, including his state and federal overtime, meal period, recordkeeping, invasion of privacy, emotional distress, and discrimination claims under Title VII of the Civil Rights Act (Title VII), the Americans with Disabilities Act (ADA), the Age Discrimination in

Employment Act (ADEA), and the Genetic Information Nondiscrimination Act (GINA). *Id.* On June 25, 2018, Dr. Dussan filed her Answer to the Complaint. *See* ECF Dkt. No. 26.

On January 4, 2019, the Court granted Defendants' Motion to Dismiss in part and denied the motion in part. (ECF Dkt. No. 33). Specifically, the Court dismissed Plaintiff's claims for unpaid overtime (Counts I and II), Title VII, ADA, ADEA, and GINA discrimination claims (Counts XI, XII, XX), various torts (Counts XIII, XIV, XV, XVI, XVII, XVIII, XIX), and for alleged failure to keep records and to provide a meal period (Counts V and VI) claims. The Court also dismissed all of Plaintiff's claims against Dr. Dussan. *Id.* ¶ 18. Plaintiff's only remaining claims, therefore, are his retaliation claims under the FLSA and the NYLL (Counts VII, VIII, IX, X) and his failure to provide a wage notice and paystub violation claims (Counts III and IV) against Defendants, except Dr. Dussan. *Id.* Defendants filed their Answer on February 14, 2019, denying Plaintiff's remaining claims and asserting their affirmative defenses. ECF Dkt. No. 34.

<u>SUMMARY OF UNDISPUTED MATERIAL FACTS</u>

Defendant Patino Eye Care is an optometry office in Flushing, Queens that provides eye care services and products to its patients and customers. (Defendants' Statement of Material Undisputed Facts in Support of Motion for Summary Judgment ("Defs. R. 56.1 Stmt."), ¶ 1). Defendant Dr. Patino is the owner of Patino Eye Care. *Id.* ¶ 2. Defendant Molina is a manager at Patino Eye Care. *Id.* ¶ 3.

On or about October 29, 2017, Defendants interviewed and hired Plaintiff for the "lab technician" position at Patino Eye Care. *Id.* ¶ 4. Plaintiff's first day of employment for Patino Eye Care was on October 30, 2017. *Id.* ¶ 5. On his first day, Plaintiff provided Defendants with his resume, along with other documents. *Id.* ¶ 6. Plaintiff's resume omitted, and did not list, Woodside Optical Corp. ("Woodside Optical") as his former employer. *Id.* ¶ 7. As a "lab tech,"

Plaintiff's job duties included ordering lenses, cutting lenses into frames, and checking lenses and prescriptions. *Id.* ¶¶ 9, 10. Defendants did not hire Plaintiff to perform sales or billing duties. *Id.* ¶ 11. Defendants never asked, permitted or authorized Plaintiff to perform billing duties. *Id.* ¶ 12. However, Defendants allowed Plaintiff, for a brief period, to perform some sales duties. *Id.* ¶¶ 13 16, 21. After observing Plaintiff's rude behavior and receiving unsolicited advice from a former co-worker of Plaintiff – who described Plaintiff as "combative" and "lacking basic customer service skills" – Defendants instructed Plaintiff to cease performing any sales functions and to return to only performing functions in the lab. *Id.* ¶¶ 13, 16, 21, 23, 24, 25, 26.

From the outset of his employment, Plaintiff was insubordinate towards his supervisors, addressed his co-workers in a rude manner, engaged in verbal altercations with his superiors, made mistakes that affected Defendants' patients, and defied Defendants' instructions not to perform job functions outside of his duties as a lab tech. *Id.* ¶¶ 13 – 19. Plaintiff's behavior, much of which is corroborated by Plaintiff's own admissions and his public filings, was very concerning to Defendants. *Id.* ¶¶ 13 – 19, 24, 25. Defendants' concerns with Plaintiff's work performance and attitude were compounded when, on November 9, 2019, Dr. Patino received unsolicited advice regarding Plaintiff from a former co-worker of Plaintiff, Dr. Benjamin Arthur ("Dr. Arthur"). *Id.* ¶ 21. Dr. Arthur described Plaintiff as difficult and combative employee who would likely fail to follow Defendants' work directives. *Id.* ¶¶ 13, 16, 21. Additionally, after observing problems in Plaintiff's work performance and attitude, Dr. Patino attempted to call Plaintiff's past employers on his resume, but could not obtain a single good reference for Plaintiff. *Id.* ¶ 22. On November 9, 2017, Mr. Molina and Yamile Chaparro, a manager for Defendants and Plaintiff's superior, called Plaintiff into a meeting to discuss his work performance and insubordination. *Id.*, ¶ 23. Among other things, Mr. Molina told Plaintiff to stop performing or attempting to perform job

functions outside of his job as a lab technician, such as sales and billing.  *Id.* ¶¶ 23 – 26.  Following the meeting, on November 11, 2017, Plaintiff defied Mr. Molina's directive and continued to perform billing job functions.  *Id.* ¶¶ 26-28.  Plaintiff also engaged in a heated and inappropriate verbal altercation with Ms. Chaparro, his superior.  *Id.* ¶ 28.

After perceiving numerous red flags in Plaintiff's work performance and attitude, on November 11, 2017, Defendants made the decision to terminate Plaintiff's employment.  *Id.* ¶¶ 8, 29.  However, Dr. Patino wanted to conduct the termination in person in part because she was worried that Plaintiff might react to the news in a belligerent manner and threaten the safety of her employees.  *Id.* ¶ 30.  Therefore, between November 11 and November 15, 2017, Dr. Patino made *numerous* attempts to contact Plaintiff and set up a meeting with Plaintiff, including through phone calls and text messages.  *Id.* ¶ 31.  Plaintiff admits that he intentionally ignored all attempts to reach out to him during this time.  *Id.* ¶¶ 31, 32.

Plaintiff offered testimony supporting that, after the November 9, 2017 meeting with Mr. Molina, he suspected that Defendants were about to terminate his job.  *Id.* ¶ 33.  As a result, on November 11, 2017, rather than answer Defendants' phone calls, Plaintiff browsed the job posting website "Indeed.com" and recovered a job posting made by Defendants.  *Id.* ¶¶ 34 - 36.  Following this discovery, Plaintiff continued to ignore all of Defendants' attempts to reach him.  *Id.* ¶ 37.  As a result, although the decision had been made days prior, Defendants could not terminate Plaintiff's employment until he finally came into work on November 15, 2017.  *Id.* ¶¶ 31–37, 42, 43.  On November 14, 2017, Plaintiff filed his EEOC Complaint.  *Id.* ¶ 38.  Plaintiff filed the EEOC Complaint because he believed his employment was about to be terminated by Defendants.  *Id.* ¶¶ 34-36.  The EEOC Complaint contained unsubstantiated allegations of fraud, race discrimination,

and national origin discrimination. *Id.* ¶ 39. The EEOC Complaint did not contain a *single allegation or fact* asserting or supporting a violation of the FLSA or the NYLL. *Id.* ¶¶ 40, 41.

On the morning of November 15, 2017, Plaintiff finally came into work. *Id.* ¶ 42. Defendants directed Plaintiff to refrain from performing any work and to wait outside of his work station for a morning meeting with Dr. Patino and Mr. Molina. *Id.* The purpose of the meeting was and has always been to terminate Plaintiff's employment. *Id.* ¶¶ 43 – 47. During the meeting, Plaintiff, for the first time, asked Dr. Patino and Mr. Molina to check their e-mail accounts for copies of complaints by Plaintiff against Defendants. *Id.* ¶ 44. Dr. Patino and Mr. Molina checked their emails and found an email from Plaintiff, dated that same day, November 15, 2017. *Id.* ¶ 44. The email contained copies of the EEOC Complaint and a six (6) page letter complaint from Plaintiff, outlining various grievances ("Letter Complaint"). *Id.* ¶¶ 44 – 46. Neither the EEOC Complaint nor the Letter Complaint raised a single allegation asserting that Defendants violated the FLSA or the NYLL. *Id.* ¶ 40, 41, 45. This was the first time Defendants had seen either the EEOC Complaint or the Letter Complaint. *Id.* ¶¶ 44, 46, 47. Neither document factored into, changed, or affected, Defendants' decision to terminate Plaintiff's employment. *Id.* ¶¶ 46, 47.

After terminating his employment, Defendants provided Plaintiff with a paycheck. *Id.* ¶ 61. After receiving the check, Plaintiff texted Dr. Patino and informed her that he had identified errors in the check – in particular, that the check was missing a paystub, tax withholdings, and payment for two (2) hours of overtime he allegedly worked. *Id.* ¶ 62. That same day, Defendants' issued a replacement check and made all the corrections Plaintiff asked for. *Id.* ¶ 63. Plaintiff was informed that a new check was available and that he could pick it up immediately. *Id.* ¶¶ 63, 64. Defendants also asked Plaintiff to return the original check. *Id.* ¶¶ 68, 69. Plaintiff texted Defendants that he would come in the next day and pick-up the check around "10 am," however,

soon after, Plaintiff sent another text message to Dr. Patino implying that he would prefer the check be mailed. *Id.* ¶ 66. Dr. Patino requested Plaintiff's mailing address for the replacement paycheck, but it was never provided. *Id.* ¶¶ 64, 65. Rather than coming to pick up the replacement check, Plaintiff instead attempted to cash in the first paycheck, but could not because Defendants had voided that check, replaced it with the replacement paycheck, and asked Plaintiff to return it to Defendants. *Id.* ¶¶ 68, 69. On December 12, 2017, Plaintiff finally picked up and cashed the replacement paycheck. *Id.* ¶¶ 66, 67. Plaintiff and Defendants agree that Plaintiff was paid in full for the time he spent working for Defendants. *Id.* ¶ 70.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the "parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *See Vazquez v. Victor's Café 52nd Street, Inc.*, 2019 WL 4688698 (S.D.N.Y. Sept. 26, 2019); *see* Fed. R. Civ. P. 56(a). The dispute about a material fact is "genuine" if the "evidence is such that a reasonably jury could return a verdict for the nonmoving party." *See Vazquez*, 2019 WL 4688698, at *1. The moving party bears the initial burden of establishing that no genuine factual dispute exists. *See id.* Once that burden is satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," and to present such evidence that would allow a jury to find in his favor. *See id.* To defeat summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *See id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." *See* Fed. R. Civ. P. 56(c)(1).

## ARGUMENT

### POINT I:
### PLAINTIFF CANNOT SUCCEED AS A MATTER OF LAW ON HIS FLSA AND NYLL RETALIATION CLAIMS.

Plaintiff cannot succeed as a matter of law on his FLSA and NYLL retaliation claims. Accordingly, Defendants are entitled to summary judgment on Plaintiff's FLSA and NYLL retaliation claims (Counts VII, VIII, IX, and X).

The FLSA forbids "any person" from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter...." 29 U.S.C. § 215(a)(3). The NYLL has a similar provision.  *See* NYLL § 215.

Both FLSA and NYLL retaliation claims are subject to familiar burden-shifting framework articulated in the Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 7992, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  *See Santi v. Hot in Here, Inc.*, 2019 WL 290145, at *4 (S.D.N.Y. Jan. 22, 2019); *see also Perez v. Jasper Trading, Inc.*, 2007 WL 4441062, at *7 (E.D.N.Y. Dec. 17, 2007) (finding it acceptable to rely on cases analyzing FLSA retaliation claim when adjudicating similar claims under the NYLL); *see also Quintanilla v. Suffolk Paving Corp.*, 2019 WL 885933, at *19 (E.D.N.Y. Feb. 22, 2019) ("To evaluate claims of unlawful retaliation under the FLSA and NYLL, courts apply the familiar three-step burden shifting framework established by the Supreme Court in [*McDonnell Douglas*].").

To establish a prima facie claim of retaliation under the FLSA, a plaintiff must establish (1) participation in a protected activity known to the Defendants, (2) an adverse employment

action, and (3) a causal connection between the protected activity and the adverse employment action, i.e., that the protected activity was a "but for" cause for the termination. *See id.*; *see also Medina v. Ricardos Mech., Inc.*, 2018 WL 3973007, at *7 (E.D.N.Y. Aug. 20, 2018).

Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a "legitimate, non-[retaliatory] reasons for the employment action." *See Palencar v. New York Power Auth.*, 2019 WL 4918426, at *14 (N.D.N.Y. Oct. 4, 2019); *see also Weinstock v. Columbia Univ.*, 224 F. 3d 33, 42 (2d Cir. 2000). If the defendant meets this burden, the burden shifts back to the plaintiff to produce "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not [retaliation] was the real reason for the employment action." *Palencar*, 2019 WL 4918426, at *14. "[T]he 'but for' standard [applies] to the ultimate determination as to whether retaliation was the real reason for the alleged adverse employment actions taken against the Plaintiffs" in an FLSA retaliation case. *See Aponte v. Modern Furniture Mfg. Co., LLC*, 2016 WL 5372799, at *16 (E.D.N.Y. Sept. 26, 2016); *see also University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *see also Palencar*, 2019 WL 4918426, at *14.

A. **PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF RETALIATION UNDER THE FLSA AND NYLL.**

Plaintiff asserts that Defendants retaliated against him by terminating his employment because he engaged in FLSA and NYLL protected activities. In doing so, Plaintiff presents two different protected activities to support his claim: (1) his November 14, 2017 Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC Complaint"), accompanied by his six (6) page letter complaint that he emailed directly to Defendants ("Letter Complaint") and (2) the Woodside Optical Lawsuit, in which he alleges violations of FLSA and

the NYLL against his former employer.  For the reasons set forth below, summary judgment is warranted as to all of Plaintiff's FLSA and NYLL retaliation claims.

1. **Plaintiff's EEOC Complaint and the Letter Complaint are not "protected activity" and therefore cannot satisfy the first element of a _prima facie_ claim of retaliation under either the FLSA or the NYLL.**

Plaintiff has failed to establish that the EEOC Complaint and the Letter Complaint qualify as "protected activity" under the FLSA or NYLL.

Neither the EEOC Complaint nor the Letter Complaint raises a *single* allegation or claim that even remotely suggests that Defendants violated the NYLL or FLSA.  Accordingly, neither the EEOC Complaint nor the Letter Complaint constitutes "protected activity."  *See Jeanty v. Newburgh Beacon Bus Corp.*, 2018 WL 6047832, at *10 (S.D.N.Y. Nov. 19, 2018) ("While it is possible to state an anti-retaliation claim under the FLSA without proving an actual violation of the FLSA … a plaintiff must make an assertion of rights protected by the statute to establish that he engaged in a protected activity.") (internal quotation marks and brackets omitted); *see also Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)).

Instead of complaints about violations of the FLSA or NYLL, both the EEOC Complaint and the Letter Complaint largely contain unsubstantiated allegations of fraud, race discrimination, and national origin discrimination that have nothing to do with either the FLSA or the NYLL.  Such complaints fail to qualify as "protected activity" under the FLSA or NYLL.  *See Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 473 (S.D.N.Y. 2013) (general complaints about discrimination and harassment do not constitute FLSA protected activity); *see Baguidy v. Boro Transit Inc.*, 283 F. Supp. 3d 14, 30 (E.D.N.Y. 2017) (holding a complaint insufficient to put defendant on notice of a violation, where plaintiff merely complained to a manager "about shortages in his pay roll"); *see Robledo v. No. 9 Parfume Leasehold*, 2013 WL 1718917, at *6 (S.D.N.Y. Apr. 9, 2013)

(holding that raising questions and concerns about how wages were calculated was insufficient to put defendant on notice).

Given Plaintiff's inability to satisfy the first element of a *prima facie* claim of FLSA and NYLL retaliation, the Court should dismiss all of Plaintiff's FLSA and NYLL retaliation claims at this stage of the analysis. *See Medina v. Ricardos Mech., Inc.*, 2018 WL 3973007, at *7 (E.D.N.Y. Aug. 20, 2018) (court's finding that plaintiff engaged in no protected activity was dispositive of plaintiff's retaliation claim and court was not required to address the other elements of such claim).

**2. Even if the EEOC Complaint and the Letter Complaint qualify as protected activity– which they do not – Plaintiff has failed to establish a causal connection between either complaint and Defendants' decision to terminate his employment.**

Even if Plaintiff could meet the first element of a *prima facie* claim of FLSA or NYLL retaliation – which he cannot – Plaintiff's claim would still fail because he cannot establish a causal connection between his EEOC Complaint or the Letter Complaint, and his termination.

The evidence establishes that Plaintiff did not file his EEOC Complaint or email the Letter Complaint until after Defendants had already decided to terminate his employment. Defendants' decision to terminate Plaintiff's employment on November 11, 2017 came after numerous verbal warnings, a meeting with Plaintiff about his work performance, Plaintiff's repeated insubordination and failure to follow work directives, and a heated verbal altercation between Plaintiff and his co-workers. (Def. R. 56.1 Statement, ¶¶ 14-29).

Out of concern for the safety of Defendants' employees, however, Dr. Patino decided to schedule a meeting with Plaintiff to terminate his employment, to ensure she and Mr. Molina were present when the decision was communicated to Plaintiff. *See id.* ¶ 30. As a result, between November 11 and November 15, 2017, Dr. Patino attempted – through numerous phone calls and

text messages – to contact Plaintiff to arrange a meeting.  Plaintiff intentionally avoided and/or refused to answer Dr. Patino's communications to him.  *Id.* ¶¶ 31, 32.

By his own admission, by November 9, 2017, Plaintiff was already concerned that Defendants were about to terminate his job.  *Id.* ¶ 35.   In fact, on November 11, 2017, Plaintiff searched the job posting website "Indeed.com" for recent job postings made by Defendants and found at least one job posting by Defendants.  *Id.* ¶ 33 – 35.  After reviewing the job posting, Plaintiff continued to ignore Defendants' efforts to reach him and then, on November 14, 2017, Plaintiff filed his EEOC Complaint.  *Id.* ¶ 33 – 38.  However, as of November 14, 2017, Plaintiff had still *not* shared the EEOC Complaint or the Letter Complaint with Defendants.  *Id.* ¶ 44. The morning of November 15, 2017, Defendants directed Plaintiff not to go to his work station, refrain from performing work, and wait for a meeting with Dr. Patino and Mr. Molina.  *Id.* ¶ 42.  The intention of the meeting was to terminate Plaintiff's employment.  *Id.* ¶¶ 42, 43, 47.  During the meeting, for the first time, Plaintiff asks Defendants to review an email he sent to them *on November 15, 2017* attaching the EEOC Complaint and the Letter Complaint.  *Id.* ¶ 44.  Defendants did review the email; however, neither document affected their decision to terminate Plaintiff's employment made *days* before either complaint was filed or e-mailed.  *Id.* ¶ 47.

Therefore, the record establishes that: (a) Defendants did not know of the alleged protected activity until November 15, 2017, well after their November 11, 2017 decision to terminate Plaintiff; and (b) the adverse actions against Plaintiff had commenced prior to his alleged protected activity.  In such circumstances, the Second Circuit, this Court, and other district courts in this circuit have readily granted summary judgment to defendants.

An essential element of an FLSA or NYLL retaliation claim is the plaintiff's "participation in a protected activity known to the defendant."  *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F.

Supp. 2d 378, 384 (E.D.N.Y. 2011).  This Court has granted summary judgment on retaliation claims on the grounds that the decisionmaker was unaware of the Plaintiff's protected activity prior to making the termination decision.  For example, in *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 34 (E.D.N.Y. 2015), the plaintiff could "not dispute that the relevant decision-makers . . . had no knowledge of her protected activity until after she was terminated.  The court applied the principle that "where it is undisputed that the decision maker was unaware of the employee's protected activity, that fact may be evidence that there is no causal connection" and granted summary judgment to the Defendants on her claims of retaliation under the ADEA and New York state discrimination laws.  *Id.* (citing *Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 92 (2d Cir. 2011) ("[L]ack of knowledge on the part of particular agents who carried out the adverse action is evidence of lack of causal connection ....")).  The Court should do the same here where the record demonstrates that there is no dispute of material fact that Defendants decided to terminate Plaintiff prior to when they knew of his EEOC Complaint or his Letter Complaint.

Additionally, there is no dispute that adverse employment actions against Plaintiff took place before he was terminated.  The Second Circuit, this Court, and other district courts in this Circuit, have repeatedly held that Defendants are entitled to summary judgment on, or dismissal of, retaliation claims in similar circumstances. *See Giudice v. Red Robin Int'l, Inc.*, 555 F. App'x 67, 69 (2d Cir. 2014) ("[W]here, as here, the only basis for showing causation at the prima facie stage is a temporal nexus, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); *see Palencar v. New York Power Auth.*, 2019 WL 4918426, at *19 (N.D.N.Y. Oct. 4, 2019) ("Considering this evidence, defendants have successfully established a non-discriminatory reason for [the adverse employment action], and given that plaintiff's only evidence of a retaliatory motive is the timing of the [adverse

employment action], no reasonable jury could conclude that but for plaintiff's protected activities, the [adverse employment action would not have occurred]."); *see also Bowen v. Baldwin Union Free Sch. Dist.*, 2017 WL 4083553, at *1 (E.D.N.Y. Aug. 23, 2017), *report and recommendation adopted*, 2017 WL 4083573 (E.D.N.Y. Sept. 14, 2017).

In *Giudice*, the plaintiff's only basis for establishing a *prima facie* causal connection in a retaliation case brought under Title VII was the temporal nexus between his complaints and the termination. *See* 555 F. App'x at 69. The employer, on the other hand, offered evidence supporting that "gradual adverse job actions" began before the plaintiff engaged in protected activity. *See id.* The Second Circuit affirmed the District Court's decision to grant summary judgment in favor of the employer, finding that, under these circumstances, an inference of retaliation sufficient to defeat summary judgment does not arise. *See id.*

Similarly, in *Bowen*, the plaintiff relied solely on the temporal nexus between his protected activity and his termination to establish a *prima facie* causal connection. *See* 2017 WL 4083553, at *7-8. This Court followed Second Circuit precedent and found that, because "gradual adverse job actions" began before plaintiff had ever engaged in protected activity, "an inference of retaliation does not arise." *See id.* The Court dismissed the plaintiff's FLSA retaliation claims.

This Court also granted summary judgment on retaliation claims brought under the FLSA and NYLL where "[p]laintiff was disciplined many times before he submitted his complaints to Defendant, which destroyed any inference that he was disciplined in retaliation for protected activity." *Pierre v. Air Serv. Sec.*, 2016 WL 5136256, at *9 (E.D.N.Y. Sept. 21, 2016) (internal quotation marks and brackets omitted).

The case at bar is similar to the cases discussed above where courts have readily granted summary judgment. It is undisputed that, on November 9, 2017, Defendants met with Plaintiff for

a stern lecture and, in Plaintiff's own words, "restricted" Plaintiff's job duties. *See* Defs. R. 56.1 Stmt. ¶¶ 24, 25, 26. The Defendants' rebuke of Plaintiff was serious enough that Plaintiff began scanning the Internet to see if Defendants were advertising for his replacement. *Id.* ¶¶ 33 – 36. It is also undisputed that Plaintiff engaged in an altercation with his superior, Ms. Chaparro on November 11, 2017, and that Defendants, beginning that same day, tried to contact Plaintiff numerous times on his days off for the purpose of terminating his employment. *Id.* ¶¶ 28 - 31. When Plaintiff came to work on November 15, 2017 – and before Plaintiff told Defendants about his EEOC Complaint and the Letter Complaint – Plaintiff was told to sit in the waiting room and not do any work or touch anything. *Id.* ¶ 42. Thus, Plaintiff was clearly subjected to adverse job actions and discipline prior to his filing of the EEOC complaint or his emailing of the Letter Complaint. Therefore, Plaintiff cannot meet his burden on summary judgment by pointing to the temporal proximity of his termination to his alleged protected activity. *See e.g., Bowen*, *See* 2017 WL 4083553, at *7, 8. Thus, under the precedents discussed above, Defendants are entitled to summary judgment on all of Plaintiff's FLSA and NYLL retaliation claims.

### 3. The Woodside Optical Lawsuit is not a protected activity "known to Defendants" and therefore cannot satisfy the first element of a prima facie claim of retaliation under either the FLSA or the NYLL.

Plaintiff also premises his FLSA and NYLL retaliation claims on the assertion that Defendants terminated his employment because he filed a lawsuit in September 2016 against his former employer, Woodside Optical. These allegations are completely unsupported by the facts.

Importantly, the resume Plaintiff supplied to Defendants on his first day of work omitted and did not mention his previous employment with Woodside Optical. Defs. R. 56.1 Stmt. ¶¶ 7, 49. Defendants had no knowledge whatsoever of Plaintiff's employment with Woodside Optical prior to terminating Plaintiff's employment. *Id.* ¶ 50. Rather, Plaintiff premises his claim

primarily on the inclusion of Dr. Patino on Rule 26 initial disclosures made by the defendants in the Woodside Optical Lawsuit. *Id.* ¶ 59. The argument is disingenuous, at best, for several reasons. First, the defendants in the Woodside Optical Lawsuit are represented by their own counsel who are not affiliated in any way with either Defendants or Defendants' counsel. *Id.* ¶ 55. Second, the Rule 26 disclosures that Plaintiff relies upon are dated December 7, 2017, which is ***well after*** Plaintiff's termination. *Id.* Third, Plaintiff has offered no other evidence supporting his allegations.

Defendants note that, although not particularly alleged in his Complaint, Plaintiff has also made numerous filings asserting that Defendants' counsel, Ellenoff Grossman & Schole, LLP ("EGS") interfered with Plaintiff's employment with Defendants as part of a "personal vendetta" by EGS attorney Paul P. Rooney, Esq., against Plaintiff. *Id.* ¶¶ 52 – 57. Plaintiff's allegations, unsurprisingly, are completely baseless. Plaintiff has supplied no evidence to support them. Thus, Plaintiff's FLSA and NYLL retaliation claims – Counts VII, VIII, IX, and X – fail as a matter of law. *See Medina*, 2018 WL 3973007, at *7.

### 4. Plaintiff's employment with Precise Optometry.

Plaintiff also appears to allege (although not entirely clearly) that Defendants "interfered" with his employment at his Precise Optometry, his other employer at the time. *See* Defs. R. 56.1 Stmt. ¶ 58. The allegations are totally unsupported by the facts or evidence in this case. In particular, Plaintiff has provided no evidence supporting his allegations in this regard, save for his own self-serving and unsubstantiated allegations and a copy of the Rule 26 disclosures in the Woodside Optical Lawsuit. *Id.* ¶¶ 58 – 60. Additionally, Plaintiff himself testified that, in or about January 2018, the stated reason for his separation from Precise Optometry was that he "wasn't needed anymore." *Id.* ¶ 60. Simply put, there is no basis for Plaintiff's allegations, and

the Court should grant summary judgment for Defendants. *See Dunn v. Sederakis*, 143 F. Supp. 3d 102, 109 (S.D.N.Y. 2015) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## B.  DEFENDANTS TERMINATED PLAINTIFF'S EMPLOYMENT FOR LEGITIMATE, NON-RETALIATORY REASONS UNRELATED TO PLAINTIFF'S ALLEGED PROTECTED ACTIVITY.

Even if Plaintiff meets his *prima facie* burden to show that he engaged in protected activity known to Defendants, and that there was a causal connection between the protected activity and his termination – which he cannot – Defendants would still be entitled to summary judgment because Defendants had perfectly valid reasons to terminate Plaintiff's employment, and Plaintiff has failed to offer *any* evidence that Defendants' claimed reasons for firing him were a pretext for retaliation.  Defendants' reasons for terminating Plaintiff's employment include Plaintiff's insubordination, his failure to follow work instructions and directives, his rudeness and poor attitude towards his co-workers, and his November 11, 2017 altercation with his superiors and co-workers.  Defendants also became concerned with continuing to employ Plaintiff after receiving advice from one of Plaintiff's former co-workers and realizing that not a single employer listed on Plaintiff's resume could provide a "good" reference.  *See* Defs. R. 56.1 Stmt, ¶¶ 14-29.

The reasons Defendants proffered are all supported both by the documentary evidence, Defendants' testimony, and Plaintiff's own testimony and admissions.  For example, it is undisputed that Defendants asked Plaintiff to stop performing work duties outside of his authorized job duties as a lab tech.  *Id.* ¶¶ 23 - 27.  Plaintiff's EEOC Complaint and his Complaint in the present lawsuit both confirm that Defendants asked Plaintiff to "cease" performing "duties" that included "bill[ing] Davis Vision eyeglass orders."  *See* Pl's Complaint ¶ 34(c); Shihabi Aff. Exs. E, F.  Plaintiff also testified that Defendants met with Plaintiff on November 9, 2017 and

"restricted" his work to lab duties.  *See* Defs. R. 56.1 Stmt. ¶¶ 25, 26.  As such, there is no dispute that Plaintiff was told by Defendants *not* to perform sales and billing work.  *Id.* ¶¶ 23 – 27.  In addition, the parties also do not dispute that Plaintiff defied Defendants' instructions and performed unauthorized work assignments.  *Id.*; *see also* Shihabi Aff. Exs. E, F.  For example, Plaintiff writes in his Letter Complaint that, on November 11, 2017, "Yomile overreacted after Laura came to Complainant in the lab and asked to be shown how to [perform] ... billing."  *See* Shihabi Aff. Ex. F; *see also* Defs. R. 56.1 Stmt. ¶ 28.  Regardless of Plaintiff's false testimony that he was hired to perform sales (he was not), there is no dispute among the parties that Mr. Molina explicitly instructed Plaintiff not to perform work duties outside of his duties as Defendants' lab tech.  Defs. R. 56.1 Stmt. ¶¶ 23-27.  The parties also do not dispute that, on November 11, 2017, Plaintiff engaged in an altercation with Ms. Chaparro, his supervisor.  *Id.* ¶ 28.

Plaintiff has offered not one shred of any competent, admissible evidence contradicting Defendants' reasons for terminating his employment.  Rather, Plaintiff appears to believe that the primary reason he was terminated was because Mr. Rooney "contacted" Defendants and informed them that Plaintiff was engaged in a lawsuit against his former employer, Woodside Optical Corp.  Plaintiff has provided no evidence to substantiate this claim against Mr. Rooney.  *Id.* ¶ 52 – 57.  In fact, Plaintiff did not even list Woodside Optical as a former employer on the resume he provided to Defendants.   Additionally, Mr. Rooney does not represent any party and is not affiliated in any way with the proceedings in the Woodside Optical case.

Overall, the record shows that there is no evidence that Defendants' explanation for Plaintiff's termination is a pretext for retaliation.  Accordingly, the Court should grant summary judgment to defendants as courts routinely do in such circumstances.  For example, in *Velazquez v. Yoh Servs., LLC*, 2019 WL 1448716, at *13 (S.D.N.Y. Mar. 15, 2019) the court granted

summary judgment on an FLSA retaliation claim when it held that "even if Plaintiff had met her prima facie burden to show that she engaged in protected activity, Defendants would still be entitled to summary judgment, because [Defendants] had a perfectly valid reason to fire her, and Velazquez has failed to offer any evidence that Defendants' claimed reason for firing her—her habitual tardiness—was a pretext for retaliation." *Id.* For the same reasons, the Court should grant summary judgment to Defendants because they had perfectly valid reasons to fire Plaintiff.

At best, Plaintiff questions the wisdom of Defendants' decision by asserting that his altercation with Chaparro (one of the reasons for his termination) resulted from an over-reaction by Chaparro. Defs. R. 56.1 Stmt. ¶ 28. Plaintiff cannot, however, defeat summary judgment with this argument. "Employees who attempt to show pretext by questioning the soundness of their employers' termination decisions face a high hurdle. The Second Circuit has been quite clear that courts do not 'sit as a super-personnel department that reexamines an entity's business decisions.'" *Suwanphanu v. Mount Sinai Health Sys., Inc.*, 2019 WL 6050971, at *6 (S.D.N.Y. Nov. 15, 2019) (quoting *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (internal quotation marks omitted)). "Instead, courts must focus their examination of a termination decision on 'whether the articulated purpose [of the decision] is the actual purpose" rather than whether the decision was 'unwise or unreasonable.'" *Suwanphano*, 2019 WL 6050972, at *6 (quoting *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 170–71 (2d Cir. 1993)).

Applying these principles in *Suwanphano, supra*, the court held that a plaintiff claiming retaliation under the FLSA could not defeat defendant's summary judgment motion by arguing that the defendant hospital made a poor or uninformed decision at a fact-finding conference and grievance hearing. *Id.*, 2019 WL 6050971, at *6. In granting summary judgment to the defendant, the Court wrote that the plaintiff was "asking this Court to do precisely what the Second Circuit

has forbid: focus on the wisdom of the hospital's decision." *Id.*  The court added that information presented at the fact finding conference "support[ed] the plausible inference that [plaintiff] had falsified hospital records" and that such evidence was sufficient to defeat the plaintiff's argument that his termination was pretextual." *Id.*  The Second Circuit and this Court have repeatedly applied these well-established rules to grant summary judgment to defendants in discrimination and retaliation cases. *See Lu v. Chase Inv. Servs. Corp.*, 412 F. App'x 413, 417 (2d Cir. 2011) ("[T]he possibility that [the employer's decision] may have been erroneous does not, without evidence that it was a pretext for discrimination, satisfy [plaintiff's] burden under *McDonnell Douglas*."); *see also Kalra v. HSBC Bank USA, N.A.*, 567 F. Supp. 2d 385, 397 (E.D.N.Y. 2008) (holding that mere disagreement with an employer's decision, even with evidence that the decision was wrong, is not sufficient to demonstrate pretext) *aff'd* 360 F. App'x 214 (2d Cir. 2010).

Thus, even if the Court finds that Plaintiff has met his burden and established a *prima facie* claim of retaliation – which he has not – Defendants have proffered legitimate, non-retaliatory reasons for terminating Plaintiff's employment, and Plaintiff cannot establish that Defendants reasons were a pretext for retaliation and that Plaintiff would not have been terminated "but for" the retaliation.  Given Plaintiff's failure in this regard, the Court should accept Defendants' reasons for terminating Plaintiff's employment and not "second-guess" Defendant' business judgment. *See e.g. Middleton v. Metro. Coll. of New York*, 545 F.Supp.2d 369, 376 (S.D.N.Y.2008) (noting that "it is not the province of the courts to function as a super-personnel department and second-guess an employer's business judgment" (citations omitted)).  As such, Defendants' FLSA and NYLL retaliation claims – Counts VII, VIII, IX, and X – must be dismissed in their entirety.

**POINT II:**
**PLAINTIFF CANNOT RECOVER STATUTORY DAMAGES UNDER THE WPTA**
**BECAUSE DEFENDANTS PAID PLAINTIFF ALL WAGES OWED AND FURNISHED**
**PLAINTIFF WITH A PAYSTUB AS REQUIRED UNDER THE LAW.**

Plaintiff cannot recover statutory damages under the WPTA based on his allegations that Defendants failed to provide Plaintiff with a wage notice and paystub. Plaintiff's wage notice claim fails because Defendants indisputably provided Plaintiff with all his wages owed. Plaintiff's pay stub claim also fails because Defendants indisputably provided Plaintiff with a pay stub.

The WPTA provides an affirmative defense to employers for failing to provide wage notices and wage statements when the employer (1) made a "complete and timely payment of all wages due" to the employee, or (2) it "reasonably believed in good faith that it was not required to provide the employee" the notices or statements. N.Y. Lab. Law § 198 (1-b), (1-d). For the reasons set forth below, Plaintiff is not entitled to statutory damages under the WPTA.

**A.   PLAINTIFF'S WPTA CLAIM FOR STATUTORY DAMAGES FOR**
**DEFENDANTS' ALLEGED FAILURE TO PROVIDE A WAGE NOTICE FAILS**
**BECAUSE DEFENDANTS PAID PLAINTIFF IN FULL.**

Plaintiff cannot succeed on his WPTA claims for a failure to provide a wage notice because Defendants made a "complete and timely payment of all wages due" to Plaintiff. *See* N.Y. Lab. Law § 198 (1-b). Under NYLL § 195(1)(a), at the time of hiring, an employer must provide a notice "in writing in English and in the language identified by each employee as the primary language of such employee," that informs the employee of, among other things, their pay rates, whether they are paid hourly, any allowances claims, and the employee's regular pay date. *See e.g. Espinosa v. Abraham Refrigeration Corp.*, 2019 WL 2725539, at *6 (S.D.N.Y. July 1, 2019).

Plaintiff testified that he was paid for all wages due to him for the approximately two-week period he worked for Defendants. The payment was also timely. Although Plaintiff will likely – as he does in his Complaint – seek to mislead the Court by asserting that he did not receive his

final paycheck until December 12, 2017 (nearly a month after his termination), Defendants urge

the Court to see past Plaintiff's cynical attempts and simply evaluate the facts at hand.  Specifically,

the timeline is as follows:

- On November 15, 2017, Defendants terminated Plaintiff's employment and provided him with a check covering the hours he worked;

- On November 16, 2017, Plaintiff sent a text message to Dr. Patino and requested that Defendants revise his check to include (i) payment for 2 hours of alleged overtime he worked, (ii) tax withholdings, and (iii) a paystub;

- That same day, Defendants issued Plaintiff a new paycheck that included payment for 2 overtime hours, tax withholdings, and a paystub.

- Dr. Patino and Plaintiff then promptly had the following text message exchange on November 16 and 17, 2017:

> **Dr. Patino:** Hi Richard. I have your pay stub and new check.  How can I get it to you and for you to return the check you have in your possession?
> **Mr. Farmer:** Sure, I can stop by tomorrow morning at 10 a.m.  If anything changes I will let you know.
> **Dr. Patino**: Sure.  Please bring the other check.
> **Mr. Farmer**: Dr. Patino, I would prefer not to engage or interact with you the reason you talk to [m]e like their [sic] beneath you. So when I am ready to do the exchange I would rather not see you.  I would rather deal with Rodrigo. Thanks.  We don't live in the 1700 Hundreds [sic][.]  This is the year 2017.
> **Dr. Patino:** Please provide me your current and complete address.  Your check will be mailed today.

*See* Defs. R. 56.1 Stmt. ¶¶ 61 – 70.

The text messages above clearly demonstrate that Plaintiff was asked to pick up his final

paycheck as soon as November 16, 2017 (the day after his termination), Plaintiff never provided

Defendants with his mailing address; rather, Plaintiff first attempted to cash in the initial check,

despite being told to return it and pick up the replacement, and then came to Patino Eye Care on

December 12, 2017 to pick up and cash the replacement check.  Given that Defendants made a

complete and timely payment of all wages due to Plaintiff, Defendants have met their burden to

establish the affirmative defense available under the WPTA and, therefore, the Court should dismiss Plaintiff's claims under N.Y. Lab. Law. § 195(1)(a) (Count 3).

**B. PLAINTIFF'S WPTA CLAIM FOR STATUTORY DAMAGES FOR DEFENDANTS' ALLEGED FAILURE TO PROVIDE A PAY STUB ALSO FAILS.**

Defendants are entitled to summary judgment on Plaintiff's WTPA claim for alleged failure to provide a pay stub for two reasons: (1) Defendants did provide Plaintiff with a pay stub; and (2) Defendants paid Plaintiff in full.

Under NYLL § 195(3), an employer must "furnish each employee with a statement with every payment of wages" that includes, among other things, the dates of work covered by that payment of wages, the rate or rates of pay and basis thereof, and net wages.  The WPTA entitles a Plaintiff to statutory damages should a Defendant fail to provide the required wage notice or wage statements.  *See* N.Y. Lab. Law § 198.  As explained above, Defendants completely and timely paid all wages due to Plaintiff.  In addition, as outlined in the text message exchange above, Plaintiff was provided a paystub.  Defendants have produced a true copy of Plaintiff's final paycheck, which includes a paystub and which Plaintiff testified he cashed. *See* Defs. R. 56.1 Stmt. ¶¶ 61 – 70.

Given that Plaintiff received a paystub, and, regardless, that Defendants made a complete and timely payment of all wages due to him, the Court should also dismiss Plaintiff's claims under NYLL § 195(3) (Count IV).

## CONCLUSION

For the above-stated reasons and authorities, the Court should grant Defendants' Motion for Summary Judgment on the remaining Courts of Plaintiff's Complaint, and grant Defendants

their costs and such other and further relief as and the Court deems just and proper.

Respectfully submitted,

ELLENOFF GROSSMAN & SCHOLE LLP

By:_____/S/_____
Mohammad B. Shihabi, Esq.
Amanda M. Fugazy, Esq.
Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas, 11th Floor
New York, NY 10105
(212) 370-1300
*Attorneys for Defendants Dr. Lucia Patino,*
*Optometrist, P.C., d/b/a Patino Eye Care, Dr. Lucia*
*Patino, O.D., and Rodrigo Molina*

Dated: December 12, 2019
      New York, New York