UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                 :
**RICHARD FARMER**,                                              :
                                                                 :
                       Plaintiff, :
                                                                 :
               - against -                        : **MEMORANDUM DECISION AND**
                                                                 : **ORDER**
                                                                 :
**DR. LUCIA PATINO, OPTOMETRIST, P.C.,**                         :
**d/b/a PATINO EYE CARE, DR. LUCIA**                             : 18-CV-1435 (AMD) (LB)
**PATINO OD, OWNER, RODRIGO MOLINA,**                            :
**OWNER, G.M., and DR. ANGELA V. DUSSAN**                        :
**OD, et. al.**,                                                 :
                                                                 :
                      Defendants.     :
                                                                 :
---------------------------------------------------------------- X

**ANN M. DONNELLY,** United States District Judge:

On March 6, 2018, the plaintiff brought this action against defendant Patino Eye Care and individual defendants Dr. Lucia Patino, Rodrigo Molina, and Dr. Angela Dussan, alleging that the defendants violated the Fair Labor Standards Act (FLSA), the New York Labor Law (NYLL), and committed other federal and state civil rights violations in connection with his two-week employment with the defendants in 2017. (ECF No. 1 ¶¶ 1-3, 7-22.) After I granted the defendants' motion to dismiss most of the plaintiff's claims (ECF No. 33), the defendants moved for summary judgment on the plaintiff's remaining claims (ECF No. 81). The plaintiff opposed. For the reasons that follow, the defendants' motion is granted in its entirety and the plaintiff's remaining claims are dismissed.

## BACKGROUND[1]

**I.   Facts**

The plaintiff's complaint is based on his two weeks of employment with Patino's optometry office, Patino Eye Care, which Patino owns and Molina manages. (ECF No. 82, Defendants' 56.1 Statement ("Defs. 56.1") ¶¶ 2-3; ECF Nos. 107-13, 107-14 (Patino Deposition ("Patino Dep.")) at 71:8-71:19, 79:2-79:11.) In October of 2017, the plaintiff was working at another optical retail store when Molina came in looking to hire a lab technician. (ECF Nos. 107-1, 107-2 (Plaintiff's Deposition ("Pl. Dep.")) at 52:2-54:23.) A few weeks later, the plaintiff applied for a position at Patino Eye Care. (*Id.*) The defendants interviewed him on October 29, 2019 and he began working the next day. (Def.'s 56.1 ¶¶ 4-5, 27-32; Pl. Dep. at 52:2-52:5, Patino Dep. at 168:11-12.)

The parties dispute what exactly the plaintiff was hired to do during his two-week term of employment. (Pl. Dep. 54:3-19, 85:4-11; Patino Dep. 75:18-76:4, 128:9-11; Molina Dep. 10:13-21, 12:14-16). Although the parties agree that Molina came to the plaintiff's former place of employment looking for a "long-term lab technician," the plaintiff says that he was hired as both "a salesperson and lab technician," and "was also hired to do . . . insurance billing." (Pl. Dep. 51:3-23.) The defendants, on the other hand, say that they only hired the plaintiff as a lab technician and that his responsibilities were limited to lab-related work, such as ordering lenses, cutting lenses into frames, and checking lenses and prescriptions. (Patino Dep. 75:16-77:13.)

---

[1] In deciding whether summary judgment is appropriate, I must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *Salamon v. Our Lady of Victory Hosp.*, 514 F. 3d 217, 226 (2d Cir. 2008). Unless otherwise noted, the factual background is based on my review of the entire record.

2

When the plaintiff asked if he could also do sales, Patino agreed to give him a "conditional opportunity" to try selling glasses "as long as [she] didn't hear any complaints." (Patino Dep. 102:21-103:23.)

The plaintiff's performance in the sales role was problematic from the start. He argued with his co-workers and supervisors, who said that he was "rude," "difficult," and made them "uncomfortable." (Patino Dep. 169:19-22, 170:2-6,192:5-194:25; Molina Dep. 15:22-16:4.) He started doing other work, like billing, taking orders and selling glasses to customers, tasks he says were always meant to be his responsibilities, but which the defendants dispute. (Pl. Dep. at 85-87; 95:19-97:25; Def. 56.1 ¶¶ 11-18.) In any event, he persisted in performing these duties even after the defendants directed him to stop. (Pl. Dep. Tr. at 95:19-97:25; Patino Dep. Tr. at 104:18-22, 106:11-16, 109:13-19, 110:16-20, 192:5-19). He also made mistakes that affected patient care; for example, during his first week, he inverted the right and left lens on a pair of glasses for a pediatric patient. (Patino Dep. 192:10-19; ECF No. 86 at 9.)

On November 7, 2017, a doctor who used to work with the plaintiff, Dr. Benjamin Arthur, sent Patino a series of text messages about the plaintiff. (ECF No. 107-5.) Arthur warned Patino that she should "carefully observe [the plaintiff] before you fully commit to hiring him. And if you don't already know ask why he left the other place[.]" (*Id*. at 3.) When Patino asked Arthur to explain, Arthur said he would "never hire [the plaintiff] . . . [h]e is condescending, combative, and lacks basic customer service skills. . . . He is more concerned about being right and pointing out that he's right than service. There is a reason he was looking for a job." (*Id.* at 3-5.) Patino thanked Arthur and acknowledged that the defendants had "some reservations about him. He does like to take control of things." (*Id*. at 4-6.) Patino also contacted the plaintiff's past employers for a reference. (Patino Dep. 166:3-168:15; ECF No.

107-4.) The record is not specific about what the references said; according to the defendants, none of the plaintiff's past employers could provide a good reference. (Patino Dep. 168:11-15.)[2]

Two days later, Molina and one of the plaintiff's supervisors, Yamile Chaparro, scheduled a meeting with the plaintiff to discuss his work performance. (Patino Dep. 192:21-193:7.) As part of that meeting, Molina told the plaintiff "not to do billing" or sales, and to focus on lab work. (Pl. Dep. 96:3-13, 117:22-23; ECF No. 107-16 ("Molina Dep.") 15:22-16:4.) Molina also told the plaintiff that he was not allowed to look at patient records. (Pl. Dep. 116:16-117:2; ECF No. 84-6 at 2.) However, the plaintiff continued to do billing. (ECF No. 84-6 at 5.) On November 11, 2017, Chaparro and the plaintiff argued about billing procedures. (*Id.*) Immediately after the argument, Chaparro spoke with Molina and Patino, and the defendants decided to terminate the defendant's employment. (Def. 56.1 ¶ 29.)

Patino says she tried to call the plaintiff on November 11th and 12th in an effort to terminate his employment (Patino Dep. 193:22-194:8); she also sent him a text message on November 14, 2017, asking him to return her calls.[3] The plaintiff did not answer the phone or return her message, and denies receiving any calls or messages from Patino before her November 14, 2017 text message. (Pl. Dep. 128:1-131:12; Patino Dep. 193:22-194:8; ECF No. 86 ¶¶ 28, 30-31.) At the same time, however, the plaintiff admits that between November 11th and

---

[2] While not material to the plaintiff's remaining claims, the parties dispute whether the plaintiff gave the defendants a copy of his resume. The defendants say the plaintiff gave them his resume on his first day of work; the plaintiff admits that the resume is his but says he does not remember providing a copy to the defendants. (Pl. Dep. 55:4-9; 56:3-9, 71:2-10; ECF No. 107-4.) However, in a January 11, 2018 email, the plaintiff says that he gave Patino a resume and W-4 document. (Pl. Dep. 55:4-9; ECF No. 86-1 at 485.) In any event, the resume does not include the plaintiff's employment at Woodside Optical Corporation, another local optometry office which the plaintiff sued in 2016 for unrelated FLSA claims. That lawsuit settled in 2018. *See Farmer v. Woodside Optical Corp. et al*, No. 16-CV-05178 (E.D.N.Y. Mar. 13, 2018), ECF No. 85.

[3] As part of his opposition to the defendants' motion, the plaintiff submitted Sprint call logs showing calls between Molina, Patino and the plaintiff on both days; the plaintiff claims defense counsel forged these to "frame the plaintiff." (ECF No. 88 at 5; ECF No. 88-1.)

4

November 14th, he tried to determine whether the defendants had posted a job listing because he wanted to know whether the defendants "were going to retaliate against me by looking for other help"; during that time, he learned that the defendants had listed his position as available. (Pl. Dep. 145:10-18; ECF No. 107-7.) On November 14, 2017, the plaintiff filed a complaint with the Equal Employment Opportunity Commission, alleging unspecified "fraudulent activity" and discrimination based on his national origin. (ECF No, 84-6.) In his EEOC complaint, the plaintiff claimed that the defendants' decision to restrict his duties to lab work was "discriminatory and unlawful" because the defendants allegedly preferred female Spanish-speaking sales staff. (*Id*. at 1-2.) The EEOC complaint did not make any allegations about the plaintiff's wages or paystubs or raise any violations of the FLSA or NYLL. (Def. 56.1 ¶¶ 40-41.)

When the plaintiff came to work the next morning, November 15, 2017, Patino and Molina told him they wanted to meet with him, and that he should wait outside his workstation. (Patino Dep. 169:2-18.) During the meeting, the defendants terminated the plaintiff's employment. (Patino Dep. 169:15-22; ECF No. 84-9.) At some point during the meeting, the plaintiff told Patino and Molina to check their emails; they saw that the plaintiff had emailed them and attached a demand letter and his EEOC Complaint. (Defs. 56.1 ¶¶ 38, 44; ECF No. 86-1 at 1447-57.) The plaintiff sent the email before the meeting, but the defendants say they did not see it until the plaintiff asked them to look at their emails. After the meeting, the defendants gave the plaintiff a check for his wages for the two weeks of his employment. (ECF No. 29-2 at 4, 6; Patino Dep. 196:13-24.)

The next day, the plaintiff told Patino that his paycheck was missing two hours of overtime, and requested "a payroll check with a paystub and actual pay rate with the correct 1.5

5

over time wage rate." (ECF No. 107-9.) Patino told the plaintiff he could pick up the paystub and replacement check, and asked the plaintiff to return the original check. (ECF No. 107-10; ECF No. 24 at 8; ECF No. 86-1 at 1055; ECF Nos. 107-9, 107-10.) The plaintiff agreed to pick up the check on November 17th, but said he did not want to see Patino and "would rather deal with [Molina]." (ECF Nos. 107-10, 107-11.) When he did not show up, Patino asked him for an address to mail the check and paystub. (*Id.*) The plaintiff did not answer, so she emailed him again four days later; the plaintiff did not respond. (ECF No. 84-8 at 904.) The parties agree that the plaintiff received the replacement check and paystub on December 12, 2017 and deposited it the next day.[4] (Pl. Dep. 156:1-14; ECF No. 107-12; ECF No. 86-1 at 1055-1060.)[5]

The plaintiff alleges that sometime in December of 2017, he learned that Patino and Molina "retaliated against Plaintiff while he was employed after learning that Plaintiff was involved and participating in a separate FLSA proceeding in the EDNY" against Woodside Optical Corporation ("Woodside"). (Compl. ¶¶ 44-46.) The plaintiff claims Patino and Molina fired him because Woodside's lawyer communicated with them and their lawyer while the plaintiff was working at Patino Eye Care. (Compl. ¶¶ 45-52.) The plaintiff also alleges that the defendants "interfered" with his later employment at Precise Optometry because they promised to be witnesses against the plaintiff in the Woodside litigation. (Compl. ¶¶ 46-49.)

## II.  Procedural History

On December 4, 2017, the EEOC dismissed the plaintiff's complaint. (ECF No. 84-1 at 71.) The plaintiff filed a twenty-count complaint on March 6, 2018. (ECF No. 1.) Defendants

---

[4] After the defendants issued a replacement check, they cancelled the first check. The plaintiff cashed the second check, and tried to cash the first check. (Pl. Dep. 161:11 – 162:20; ECF Nos. 107-6 through 107-10; Patino Dep. 198:19-25, 199:3-9).

[5] After he deposited the check, the plaintiff told Patino that the defendants also owed him "two weeks of unpaid severance pay and other damages" because he was "wrongfully terminated." (ECF No. 107-12.)

Patino Eye Care, Patino and Molina moved to dismiss the plaintiff's claims on June 21, 2018. (ECF Nos. 22-23.) On January 4, 2019, I dismissed the majority of the plaintiff's claims and all claims against defendant Dussan, but denied the motion as to the claims of retaliation (Counts VII, VIII, IX, and X) and failure to provide a wage notice and paystub (Counts III and IV). (ECF No. 33.)

The defendants moved for summary judgment on December 12, 2019, which the plaintiff opposed. (ECF Nos. 81-85.) The plaintiff filed his opposition on January 16, 2020, but then filed multiple letters in which he accused defense counsel of forging evidence and "conducting abusive discovery." (ECF Nos. 87-88, 92.) On February 3, 2020, the plaintiff moved before Magistrate Judge Lois Bloom for a hearing to "hold all parties responsible for conducting abusive discovery," once again leveling accusations against defense counsel. Judge Bloom denied his request for a hearing on February 6, 2020. (ECF No. 94.) He filed a second motion for an evidentiary hearing, which Judge Bloom also denied. (ECF Nos. 95, 97.) In a February 18, 2020 order, Judge Bloom warned the plaintiff that he was "not granted leave to brief this issue further." (ECF No. 97.) Nonetheless, the plaintiff filed three additional letters filled with accusations against defense counsel and requesting an evidentiary hearing. (ECF Nos. 98, 101, 104.) On April 21, 2020, I denied the plaintiff's motion for an evidentiary hearing and warned him that I would "consider imposing sanctions, including restricting his access to the docket[,]" if he continued to disregard Judge Bloom's orders or my orders.

On May 8, 2020, I directed the defendants to file complete copies of all deposition transcripts. The defendants filed the requested transcripts on May 11, 2020; they advised the Court that they had been "unable to find the marked exhibits to either of these depositions or to obtain them from the court reporter," and had contacted the plaintiff to request the exhibits.

7

(ECF No. 105-1.) The next day, the plaintiff submitted a 23-page letter to the Court in which he repeated many of the accusations in his earlier letters and asked for sanctions. (ECF No. 106.) He claimed that defense counsel engaged in "fraud," "staged" their email correspondence about the transcript exhibits and "fabricat[ed] and manufactur[ed] document forgeries" in their pending motion for summary judgment. (*Id*. at 1-2.) On May 13, 2020, I denied the plaintiff's request for sanctions, and reminded the plaintiff of my April 21, 2020 order, in which I warned him that he faced sanctions if he continued to make filings.[6]

Because the plaintiff is *pro se*, and out of an abundance of caution, I have reviewed his letters and supplemental submissions about counsel as part of my consideration of the defendants' motion. Nevertheless, I do not address most of the arguments contained in these letters because they are unsupported, largely incomprehensible and unrelated to the substance of his claims.

## LEGAL STANDARD

Summary judgment is appropriate only if the parties' submissions, including deposition transcripts, affidavits or other documentation show that there is "no genuine dispute as to any material fact," and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the "burden of showing the absence of any genuine dispute as to a material fact[.]" *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997). A fact is "material" for the purposes of summary judgment when it "might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Barlow v. Male Geneva Police Officer Who Arrested Me on Jan.*

---

[6] On May 21, 2020, the plaintiff appealed my April 21, May 8, and May 13, 2020 orders to the Second Circuit. (ECF No. 108.) That interlocutory appeal is still pending.

*2005*, 434 F. App'x 22, 25 (2d Cir. 2011) (citations omitted).  Once the moving party has met its burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial.  *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

The court resolves all ambiguities and draw all reasonable inferences in favor of the non-moving party.  *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 135 (2000).  Because the plaintiff is *pro se*, I construe his opposition liberally "to raise the strongest arguments [that it] suggest[s]." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  Application of this liberal standard, however, does not excuse the plaintiff from providing the evidentiary support necessary to survive a summary judgment motion; he "must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998); *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005); *Shankle v. Andreone*, No. 06-CV-487, 2009 WL 3111761, at *2 (E.D.N.Y. Sept. 25, 2009) ("bald assertions" are insufficient to overcome a motion for summary judgment).

## DISCUSSION

The plaintiff asserts retaliation claims under the FLSA and New York Wage Theft Prevention Act, alleging that the defendants fired him in retaliation for filing an EEOC claim against Patino Eye Care, and for his ongoing lawsuit against his prior employer, Woodside Optical. (Compl. ¶¶ 36-39, 98-104.)  He also alleges that the defendants violated NYLL § 195 and 162 by failing to provide him with a wage notice at the time he was hired and failing to issue

him a paystub. The defendants move for summary judgment on all of the plaintiff's remaining claims.

## I. Retaliation Claims

The plaintiff argues that the defendants fired him in retaliation for engaging in two different protected activities: (1) filing the November 14, 2017 EEOC complaint, and (2) suing his previous employer, Woodside Optical. (Compl. ¶¶ 36-39, 98-104.) The defendants respond that they decided to terminate the plaintiff's employment before they knew about either activity, and that the plaintiff has not established a *prima facie* case of retaliation. They also argue that they terminated the plaintiff's employment for legitimate, non-retaliatory reasons unrelated to any protected activities.

Both the FLSA and NYLL make it unlawful to discharge an employee in retaliation for engaging in a protected activity. *See* 29 U.S.C. § 215(a)(3); N.Y. Lab. Law § 215(1)(a). "'At the summary judgment stage, courts address FLSA retaliation claims under the familiar 'burden-shifting' framework set forth by the Supreme Court in *McDonnell Douglas* . . .'" *Jones v. Pawar Bros. Corp.*, No. 17-CV-3018, 2020 WL 364168, at *9 (E.D.N.Y. Jan. 22, 2020) (quoting *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 471 (S.D.N.Y. 2008)). The standards for stating a claim for retaliation under the FLSA and NYLL are nearly identical, and require a plaintiff to make a *prima facie* showing of retaliation by pleading "(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011) (citing *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) and *Higueros v. New York State Catholic Health Plan, Inc.*, 526 F.Supp.2d 342, 347 (E.D.N.Y. 2007)).

The parties agree that terminating the plaintiff is an adverse employment action. The dispute centers on whether the defendants knew that the plaintiff engaged in any protected activity before they fired him, and whether the plaintiff has demonstrated any causal connection between these alleged protected activities and his termination.

The plaintiff has not established that his EEOC complaint constituted a protected activity under the FLSA. "To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011). "While it is possible to state an anti-retaliation claim under the FLSA without proving an actual violation of the FLSA . . . a plaintiff must make an assertion of rights protected by the statute to establish that he engaged in a protected activity." *Jeanty v. Newburgh Beacon Bus Corp.*, 2018 WL 6047832, at *10 (S.D.N.Y. Nov. 19, 2018) (quotations and alterations omitted). In his EEOC complaint, he alleged fraud, race discrimination and national origin discrimination, but not any FLSA or NYLL violations. Even accepting all of the plaintiff's EEOC allegations as true, none of them assert any rights protected by either statute, or make any claims about overtime, withholding, or pay stubs—the basis of the plaintiff's remaining retaliation claims. *See Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 473 (S.D.N.Y. 2013) (general complaints about discrimination and harassment do not constitute FLSA-protected activity). Because the plaintiff has not shown that his EEOC complaint was a protected activity for purposes of his remaining claims, he has not made out a *prima facie* case of retaliation on that basis. *Medina v. Ricardos Mech., Inc.*, No. 16-CV-1407,

2018 WL 3973007, at *7 (E.D.N.Y. Aug. 20, 2018) (finding that absence of a protected activity is "dispositive" for a plaintiff's FLSA claims).[7]

Nor has the plaintiff shown that his FLSA lawsuit against his former employer, Woodside Optical, was a protected activity about which the defendants knew. While the parties agree that filing an FLSA lawsuit is a protected activity, *see Mullins v. City of New York*, 626 F.3d 47, 54 (2d Cir. 2010), they disagree about the significance of the plaintiff's suit against Woodside. According to the plaintiff, counsel for Woodside told the defendants and their counsel about the suit during the two-week period that the plaintiff worked for the defendants, which caused the defendants to terminate the plaintiff. The defendants respond that they did not know anything about the suit and deny that the lawsuit played a part in their decision to fire the plaintiff.

There is no evidence on this record that the defendants knew about the Woodside Optical lawsuit before they terminated the plaintiff's employment, or that they communicated with Woodside's lawyers. The plaintiff's citation to Patino's deposition testimony is unavailing, because she said that she did not know that the plaintiff had ever worked at Woodside; instead, she testified that she spoke to Woodside's lawyer only after she fired the plaintiff, and that his prior employment there was not included in his resume. The fact that Woodside's counsel included Patino's name in their Rule 26 disclosures is not significant, because those disclosures are dated December 7, 2017—three weeks after the defendants terminated the plaintiff's employment. "Once the party moving for summary judgment claims the absence of a genuine

---

[7] In my January 4, 2019 decision granting in part and denying in part the defendants' motion to dismiss, I found that the plaintiff had sufficiently pled that "he engaged in a 'protected activity' by filing an EEOC claim against Patino Eye Care before he was fired, and that the defendants terminated his employment on November 15, 2017." ECF No. 30 at 3. Unlike at the summary judgment phase, on a 12(b)(6) motion the plaintiff was not required to produce evidence of each prima facie element or "'plead every element of a prima facie case,' but rather must meet the plausibility standard established by *Twombly* and *Iqbal*." *Id*. at 3. (citations omitted).

12

dispute of material fact, the opposing party cannot 'rely merely on allegations or denials' but instead must present specific evidence showing that there is in fact a genuine dispute." *Cole v. City of New York*, No. 10-CV-5308, 2013 WL 781640, at *7 (S.D.N.Y. Mar. 1, 2013) (quoting *Amaker v. Foley*, 274 F.3d 677, 680-81 (2d Cir. 2001)).  The plaintiff cites no evidence, other than his unsupported assertion that the defendants knew about the Woodside Optical lawsuit, and that the defendants, defense counsel, his prior employers, and counsel for Woodside are all engaged in a "vendetta" against him.  (ECF No. 84-10 at 4.)

The plaintiff has not demonstrated that the defendants knew about any protected activity, and therefore cannot make out a *prima facie* case on these grounds.  Nevertheless, I have also considered whether there is any evidence of a causal connection between the termination and any protected activity.  Causal connection may be established either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Thomson v. Odyssey House*, No. 14-CV-3857, 2015 WL 5561209, at *22 (E.D.N.Y. Sept. 21, 2015) (quotations and citations omitted), *aff'd*, 652 F. App'x 44 (2d Cir. 2016).  "[T]he cases that accept mere temporal proximity as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be very close." *Bowen v. Baldwin Union Free Sch. Dist.*, No. 15-CV-6829, 2017 WL 4083553, at *6 (E.D.N.Y. Aug. 23, 2017) (quoting *Wang v. Palmisano*, 157 F. Supp. 3d 306, 327 (S.D.N.Y. 2016)), *report and recommendation adopted*, 2017 WL 4083573 (E.D.N.Y. Sept. 14, 2017).  Because there is no evidence that the defendants ever learned about the Woodside lawsuit during the plaintiff's term of employment, it follows that the plaintiff has not shown any causal connection between the lawsuit and his termination.

13

The parties agree that the plaintiff notified the defendants about his complaint the day after he submitted it, during the meeting the defendants say they scheduled to terminate the plaintiff's employment; the plaintiff alerted them to it when he told them to check their emails for a copy of the complaint. Giving the plaintiff every benefit of the doubt, and putting aside the facts surrounding the meeting—that the plaintiff avoided the defendants' calls, came back to work only after filing his complaint and then alerted the defendants to the complaint—a jury focused only on timing could find a "causal connection" between the complaint and the plaintiff's termination.[8]

Assuming a *prima facie* case of retaliation for either of these alleged protected activities, the burden shifts to the employer "to articulate a legitimate, non-retaliatory reason for the adverse employment action." *Williams v. Woodhull Med. & Mental Health Ctr.*, 891 F. Supp. 2d 301, 314 (E.D.N.Y. 2012) (quoting *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir. 2005) (quotation marks omitted). "[B]y showing that protected activity was closely followed in time by the adverse employment action," if "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, [then] an inference of retaliation does not arise." *Martinez v. Davis Polk & Wardwell LLP*, 208 F. Supp. 3d 480, 489 (E.D.N.Y. 2016) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)), *aff'd*, 713 F. App'x 53 (2d Cir. 2017); *see Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)).

The defendants have articulated legitimate, non-retaliatory reasons for terminating the plaintiff's employment. Despite the plaintiff's assertions that he was a model employee, his two-

---

[8] By the same token, the jury could also conclude that the plaintiff realized the defendants wanted to fire him and timed his EEOC complaint in order to manufacture a claim.

14

week period of employment is replete with examples of unprofessional behavior and poor work performance. He argued with coworkers and supervisors, who said that he was "rude" and made them "uncomfortable." (Patino Dep. 169:19-22, 170:2-6, 192:5-194:25; Molina Dep. 15:22-16:4.) He ignored the defendants' repeated instructions that he was not to do sales or billing-related work, even after a meeting where he admits the defendants limited him to lab-related work and told him to stop taking on additional responsibilities. During his brief employment, Patino had to "talk to [the plaintiff] constantly about things that [the defendants were not] comfortable" with him doing. (Patino Dep. 192:2-19.) He made a mistake—switching the lenses on a pediatric patient's glasses—which affected the patient's care. Moreover, Patino learned after hiring the plaintiff that not one of his former employers could provide a good reference. Under these circumstances, the defendant's decision to fire the plaintiff was legitimate and non-retaliatory. *See Williams v. Woodhull Med. & Mental Health Ctr.*, 891 F. Supp. 2d 301, 315-16 (E.D.N.Y. 2012) (finding that the employer's concern for the quality of care to patients following the plaintiff's multiple instances of poor judgment established a legitimate, non-discriminatory reason for its actions); *Sanders v. Mount Sinai Med. Ctr.*, No. 98-CV-828, 1999 WL 1029734, at *6 (S.D.N.Y. Nov. 10, 1999) (dismissing claims on summary judgment where the employer showed that the plaintiff's failures impacted patient care).

Apart from a blanket denial, the plaintiff does not rebut the defendants' legitimate, non-retaliatory reasons for his termination.[9] "[O]nce an employer offers such proof, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for

---

[9] Indeed, while the plaintiff insists these complaints about his job performance were unfounded, he admits many of the basic facts underlying the defendants' reason for terminating his employment: that he argued with Chaparro about the scope of his duties because he believed she was patronizing, that he ignored explicit instructions not to take on additional responsibilities because he believed they were part of his job description, and that he mistakenly switched the lenses on a pair of glasses and gave them to a patient.

15

the adverse employment action." *Williams*, 891 F. Supp. 2d at 328 (quoting *Jute*, 420 F.3d at 173; *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) ("[A] plaintiff alleging retaliation . . . must show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision.")  The plaintiff's additional claims that the defendants and counsel fabricated or forged evidence find no support in the record.[10]  There is no genuine dispute of fact as to the defendants' legitimate, non-retaliatory reasons for his termination.[11]

## II. NYLL Wage Claims

The plaintiff also alleges that the defendants violated NYLL § 195 by failing to provide him with a wage notice and a pay stub.  The defendants argue that these claims must fail because they paid the plaintiff in full, and gave him a pay stub.

    a. <u>Wage Notice</u>

Under NYLL § 195(1)(a), employers must provide employees with wage and hour notices within ten business days of the start of their employment.  N.Y. Lab. Law § 195(1)(a); *Carter v. Tuttnaeur U.S.A. Co.*, 78 F. Supp. 3d 564, 569 (E.D.N.Y. 2015).  Whenever an employer provides the wage notice to an employee, "the employer shall obtain from the employee a signed and dated written acknowledgment . . . of receipt of this notice, which the employer shall preserve and maintain for six years."  *Rodriguez v. Ridge Pizza Inc.*, No. 16-CV-

---

[10] For example, while the plaintiff insists that he never gave the defendants a copy of his resume and that they must have forged it, the plaintiff says in a January 11, 2018 email that he gave Patino a resume and W-4.  (ECF No. 84-4 at 1-3.)

[11] While unclear, the plaintiff also appears to allege that the defendants "interfered" with his employment at Precise Optometry, his other employer at the time.  These allegations are unsubstantiated and not supported by the record.  At his deposition, the plaintiff testified that he stopped working at Precise Optometry because he "wasn't needed anymore."  (Def. 56.1 ¶ 60; Pl. Dep. 75:12-17.)  The plaintiff has not made out a *prima facie* case.  *See Dunn v. Sederakis*, 143 F. Supp. 3d 102, 109 (S.D.N.Y. 2015) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

16

00254, 2018 WL 1335358, at *9 (E.D.N.Y. Mar. 15, 2018) (quoting *Canelas v. World Pizza, Inc.*, No. 14-CV-7748, 2017 WL 1233998, at *11 (S.D.N.Y. Mar. 31, 2017)) (quotation omitted). An employee who does not receive a wage notice is entitled to a private right of action and damages of fifty dollars per workday that the violations occurred, with a maximum recovery of five thousand dollars, together with costs and reasonable attorney's fees. N.Y. Lab. Law § 198(1-b); *see also Sanchez v. First Class Home Improvement, LLC*, No. 16-CV-2064, 2018 WL 4100490, at *10 (E.D.N.Y. Aug. 28, 2018). Under this section, a "complete and timely payment of all wages due is an affirmative defense to a Section 195(1)(a) claim." *Dudley v. Hanzon Homecare Servs., Inc.*, No. 15-CV-8821, 2018 WL 481884, at *4 (S.D.N.Y. Jan. 17, 2018) (quoting N.Y. Lab. Law § 198(1-b)); *see Marin v. Apple-Metro, Inc.*, No. 12-CV-5274, 2017 WL 4950009, at *17 (E.D.N.Y. Oct. 4, 2017).

The defendants argue—and the plaintiff does not dispute—that the defendants paid him in full for the two-week period he worked for the defendants. (Pl. Dep. 156:1-14.) Patino gave the plaintiff a check on November 15, 2017, the day he was terminated. (Patino Dep. 196:13-24.) After the plaintiff notified Patino that his final payment did not reflect several hours of overtime or attach a paystub, Patino issued an updated check and affixed a paystub. She then contacted the plaintiff by text message to arrange delivery of the new check and paystub:

> **Patino:** Hi Richard. I have your pay stub and new check. How can I get it to you and for you to return the check you have in your possession?
> **Farmer:** Sure, I can stop by tomorrow morning at 10 a.m. If anything changes I will let you know.
> **Patino**: Sure. Please bring the other check.
> **Farmer**: Dr. Patino, I would prefer not to engage or interact with you the reason you talk to [m]e like their [*sic*] beneath you. So when I am ready to do the exchange I would rather not see you. I would rather deal with Rodrigo. Thanks. We don't live in the 1700 Hundreds [*sic*] this is the year 2017.
> **Patino**: Please provide me with your current and complete address. Your check will be mailed today.

17

(ECF Nos. 107-10, 107-11.) Although the replacement check was available on November 16, 2017, the plaintiff did not provide his mailing address or return to Patino Eye Care to retrieve the replacement check until December 12, 2017. (Pl. Dep. 165:6-166:6.)[12] The plaintiff received his final payment within a month of his termination. Under the circumstances, I find that the payment was timely. Because there are no genuine issues of material fact about whether the defendants made complete and timely payment of all wages due, the defendants' motion for summary judgment as to the plaintiff's Section 195(1)(a) claims are granted.

### b. Pay Stub Violation

NYLL § 195(3) requires employers to "furnish each employee with a statement with every payment of wages," listing detailed information including "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof . . . gross wages; deductions; allowances . . . and net wages." The plaintiff is entitled to statutory damages if the defendants fail to provide a pay stub. The defendants have produced a copy of the plaintiff's final paycheck, which includes a paystub that includes all of the required information except for the defendants' phone number. (ECF No. 84-1 at 832.)[13] However, as with a wage notice violation, even if the plaintiff alleges that this paystub is incomplete, the defendants' complete and timely payment of all wages due to the plaintiff is an affirmative defense to any claims under this provision. *See Dudley*, 2018 WL 481884, at *4 (quotation marks omitted); N.Y. Lab. Law § 198(1-d). In his deposition, the

---

[12] The plaintiff attempted to cash the first check after Patino voided it and replaced it with a new check for the correct amount.

[13] In her deposition, defendant Patino conceded that "a check was issued [to the plaintiff] on November 15th without a pay stub." (Patino Dep. 15:13-14.) On November 16, 2017, after receiving a request from the plaintiff for a paystub and two hours of overtime wage payments allegedly owed, Patino wrote a new check and attached a paystub. (ECF No. 84-1 at 84-86.)

18

plaintiff confirmed that he received all payment owed to him.  (Pl. Dep. 156:1-14.)  Therefore, the plaintiff's NYLL § 195(1)(a) claim is also dismissed.

## CONCLUSION

For the reasons set out above, the defendants' motion for summary judgment is granted.

**SO ORDERED.**

s/Ann M. Donnelly
───────────────────────────
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       September 4, 2020